STATE of Wisconsin, Plaintiff-Respondent,

v.

Kevin HALBERT, Defendant-Appellant.†

Court of Appeals

*No. 88–0287–CR. Submitted on briefs September 6, 1988.—
Decided October 13, 1988.*

(Also reported in 432 N.W.2d 633.)

† Petition to review denied.

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Gregory M. Posner-Weber,* assistant attorney general, of Madison, Wisconsin.

For the defendant-appellant the cause was submitted on the briefs of *Donna L. Hintze,* assistant state public defender, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Kevin Halbert appeals from a judgment convicting him of armed robbery in violation of sec. 943.32(2), Stats., and from an order denying his motion for modification of his sentence or, alternatively, for resentencing. He was sentenced to a term of incarceration not to exceed ninety months (seven and one-half years).

Halbert raises three issues on this appeal. First, he argues that the sentencing court abused its discretion when it rejected probation as an alternative to incarceration. Second, he contends that the trial court improperly failed to consider the sentencing guidelines promulgated by the Sentencing Commission even though it was required to do so by sec. 973.012,

Stats. Third, Halbert submits that even if the trial court considered the sentencing guidelines, he should be resentenced because information on the sentencing guidelines form was inaccurate. For the reasons discussed below, we conclude that Halbert's judgment of conviction and sentence and the order denying his alternative motions for resentencing or sentence modification must be affirmed.

## I.

Halbert was charged with armed robbery in connection with a home invasion. In the course of pleading guilty to that charge, Halbert told the trial court that he and a friend discussed robbing "some people that had a lot of money." He said they went to a house where two women lived and, after telling them a false story about looking for some missing bicycles, Halbert and his friend robbed the women at gun point. Halbert admitted carrying the gun, but told the court that it was not loaded and did not work. He said that his friend persuaded him to participate in the robbery and gave him the gun.

At sentencing, the district attorney recommended a period of incarceration not to exceed five years. Halbert's lawyer requested probation. Halbert told the court that he had never done anything "like that to anyone before in [his] life" and that he was "sorry."

In the course of its sentencing colloquy with Halbert, the court commented that "[t]he court, in its wildest imagination, wouldn't place you on probation for that crime." Later on, the court explained the factors it was considering in passing sentence:

> You are hanging around with some pretty bad people and that got you into some pretty bad stuff here.

All right, the offense is so serious, the gravity of the offense is so serious, but I think we—when looking at it in respect to the co-defendant and his background and this defendant is new to the system, the co-defendant was an old timer was more of a director of this. This defendant was unlimited [sic] and easily persuaded.

So, his character, he has some good things going for him in that regard. He hasn't been in trouble for [sic] this community up to this point. He really picked a big and serious crime. It's his first crime.

Society needs to be protected against this type of action. We will not condone this. We will not allow this. And anybody that commits this type of action is going to go to prison and going to go to prison for a sizable amount of time.

I am not going to give you 15 years. I am not going to give you 20 years that you could get. I am going to give you, because of all the factors I talked about, sentence you to 90 months and 90 months is seven and a half years. That will give you half of what Mr. Bolts got.

I am doing that because you don't have any record. But you are going to go to prison. We are not going to have people that go into people's houses with guns on the streets of Milwaukee. And that's the bottom line.

Although the sentencing guideline form for armed robbery, issued by the Sentencing Commission under sec. 973.011, Stats., was not mentioned during the course of the sentencing hearing, the court did complete the form as required. The court's handwritten notes explained that it was exceeding the Sentencing Commission recommendation because Halbert

"went into home of victims—used handgun."[1] The front of the form used by the court gave Halbert one point for having an "operable gun." This fact changed the recommendation from an incarceration rate of 45%, with a 24 to 42 month range, to an incarceration rate of 62%, with a 42 to 60 month range.

## II.

A. Trial courts exercise awesome responsibility when they sentence a person convicted of criminal activity. Fundamental principles of fairness and due process require that they base sentencing decisions on legitimate considerations. The seminal case in this area, *McCleary v. State*, 49 Wis. 2d 263, 182 N.W.2d 512 (1971), explains the underlying policy:

> It is not the philosophy of modern criminal law that the punishment fit the crime alone and that for every violation of a particular statute there be an identical sanction. In light of the function of the law to deter similar acts by the defendant and others and to rehabilitate the individual defendant, it is essential that a sentencing court consider the nature of the particular crime, *i.e.,* the degree of culpability—distinguishable from the bare-bones legal elements of it—and the personality of the criminal. The interests of both society and the individual must be weighed in each sentencing process.

*Id.* at 271, 182 N.W.2d at 517.

---

[1] A wavy line was drawn through this comment. The record does not reveal when, or by whom, the line was drawn.

As summarized by *Elias v. State,* 93 Wis. 2d 278, 286 N.W.2d 559 (1980), "[t]he primary factors to be considered in imposing sentence are the gravity of the offense, the character of the offender, and the need for protection of the public." *Id.* at 284, 286 N.W.2d at 561. In other words, a "sentencing court must assess the crime, the criminal, and the community, and no two cases will present identical factors." *In re Judicial Administration: Felony Sentencing Guidelines,* 120 Wis. 2d 198, 201, 353 N.W.2d 793, 795 (1984). Thus, it is improper for a court to approach sentencing decisions with an inflexibility that bespeaks a made-up mind. *See State v. Martin,* 100 Wis. 2d 326, 302 N.W.2d 58 (Ct. App. 1981) (trial court's statement that it would never grant straight probation to a person convicted of a drug offense was improper).

Halbert contends that the trial court abused its discretion because it "refuse[d] to consider probation." The court's comments must, however, be analyzed in the context of its lengthy colloquy with Halbert during the course of the sentencing hearing. In that context, it is clear that the court considered probation as an alternative to incarceration, but rejected probation based on its evaluation of Halbert's crime and the "index" of Halbert's character, *see Elias,* 93 Wis. 2d at 284–85, 286 N.W.2d at 562, namely, Halbert's association with "some pretty bad people."

Contrary to Halbert's contention, the court did not express a rigid policy that would never bend to circumstance. Unlike the trial court in *Martin,* the court in this case did not express an immutable sentencing policy that every person convicted of the crime designated as "armed robbery" had to go to prison, irrespective of the specific facts of the armed

128 .

robbery or the character of the armed robber. Rather, the trial court said it was not going to place Halbert on probation for the specific home invasion armed robbery Halbert helped commit. Thus, the first time the subject of probation came up, the court told Halbert: "Your attorney is asking for probation. The Court, in its wildest imagination, wouldn't place you on probation for that crime." The second time the subject came up, the court reflected: "Society needs to be protected against this type of action. We will not condone this. We will not allow this. And anybody that commits this type of action is going to go to prison and going to go to prison for a sizable amount of time."

The sentencing transcript reveals that the court fully explored the appropriate sentencing considerations and imposed a sentence crafted to the specific circumstances of this case; it assessed "the crime, the criminal, and the community." *Felony Sentencing Guidelines,* 120 Wis. 2d at 201, 353 N.W.2d at 795. It did not abuse its discretion.

B.   The second and third issues Halbert raises on this appeal concern the guidelines trial courts must consider in passing sentence. Sec. 973.012, Stats. He contends that the court failed to consider the guidelines and, alternatively, if the court did consider them, the form was inaccurate because it penalized Halbert for using an operable gun. No matter how denominated, however, the crux of his complaint is that the ninety month sentence did not fall within the guide-

lines.[2] While these matters are clearly without merit,[3] we are prevented from considering them by the express language of sec. 973.012, Stats.

Section 973.012, Stats., provides:

> Use of guidelines by judges. Beginning on November 1, 1985, a sentencing court, when imposing a sentence, shall take the guidelines established under s. 973.011 into consideration. If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines. *There shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines.* [Emphasis added.]

It is the operative section of a family of provisions designed to insure that trial courts are aware of other courts' sentencing practices. Thus, sec. 973.011(1), Stats., provides that the guidelines are to be "based primarily on sentencing experience in this state to the extent sufficient data is available."[4] The guidelines

---

[2] As seen, the sentence exceeded the guideline recommendation irrespective of whether the gun was operable.

[3] First, the court signed the form, which indicates the guideline was considered. Second, Halbert told the court twice (once at the plea hearing and once at sentencing) that the gun was not loaded and did not work. Thus the "error" on the form, if in fact it was error (there was no *proof* one way or the other), was harmless because there is no reasonable possibility that it contributed to the sentence. *See State v. Dyess,* 124 Wis. 2d 525, 540–43, 370 N.W.2d 222, 230–32 (1985) (discussing harmless error in the context of trial).

[4] They thus differ from the guidelines adopted for the federal judiciary, which were formulated by the United States Sentencing Commission based on the members' evaluation of what would be appropriate punishment. *See* 28 U.S.C. sec. 994(m). Under the

were promulgated by the Sentencing Commission under authority granted to it by secs. 973.01, 973.011 and 751.13(4), Stats., following the Supreme Court's refusal to assume that responsibility pursuant to sec. 751.13(2), Stats. *See Felony Sentencing Guidelines,* 120 Wis. 2d at 204, 353 N.W.2d at 796. The guidelines, however, were not meant to be applied in a procrustean manner since that would subvert the requirement that trial courts consider all of the appropriate factors and not merely the historical statistical record. As Justice William A. Bablitch explained in a concurring opinion, which spoke for five members of the Supreme Court:

> It is important to note that the guidelines, once established [by the Sentencing Commission], will be just that: guidelines, not edicts. Unless and until the legislature does away with indeterminate sentencing or adopts a system of minimum mandatory sentences for certain crimes, the responsibility of the trial court will continue to be to sentence *within the range of the penalties established by the legislature.* The responsibility of this court, firmly established in *McCleary,* will continue to be to review the propriety of those sentences on appeal.

*Id.* at 207, 353 N.W.2d at 798 (Bablitch, J., concurring) (emphasis added).

Jurisdiction of the Wisconsin Court of Appeals is subject to legislative directive: "The appeals court shall have such appellate jurisdiction ... as the legislature may provide by law." Wisconsin Constitution, Art. VII, sec. 5(3); sec. 752.01(1), Stats. ("court of appeals has appellate jurisdiction as provided by

Sentencing Reform Act of 1984, 98 Stat. 1987, which established the United States Sentencing Commission, both the prosecution and the defendant may seek appellate review of a sentence. 18 U.S.C. sec. 3742.

law"). As already noted, sec. 973.012, Stats., specifically provides that "[t]here shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines." Whatever may be the authority of the Supreme Court to exercise appellate jurisdiction in this area, it is clear that we have none.[5] Simply put, a trial court's compliance or non-compliance with sec. 973.012, Stats., is not an appellate issue here, because the Court of Appeals has no jurisdiction.[6]

Inventive counsel may attempt to disguise appeals that are, in reality, based on "the trial court's decision to render a sentence that does not fall within the sentencing guidelines," sec. 973.012, Stats., in the

[5]Legislatures have limited appellate jurisdiction in a number of areas. Thus, for example, there is no appeal from a circuit court's statutory-appeal (as opposed to certiorari) review of a board of fire and police commission's order suspending, reducing, or removing a person under its jurisdiction. Sec. 62.13(5)(i), Stats.; *Jendrzejewski v. Board of Fire & Police Comm'rs,* 257 Wis. 536, 44 N.W.2d 270 (1950)(interpreting a predecessor provision then found at sec. 62.13(5)(h), Stats.); *see also State ex rel. Kaczkowski v. Fire & Police Comm'rs,* 33 Wis. 2d 488, 148 N.W.2d 44, *cert. denied,* 389 U.S. 848 (1967).

In the federal system, there are a number of instances where Congress has precluded appellate review. *See, for example,* 28 U.S.C. sec. 2253 (no right to appeal from an order denying habeas corpus relief in proceeding testing validity of removal warrant) and 35 U.S.C. sec. 303(c) (no appeal from determination by Commissioner of Patents and Trademarks "that no substantial new question of patentability has been raised."

[6]The requirement in sec. 973.012, Stats., that trial courts explain why they deviated from a sentencing guideline recommendation may be enforced despite the preclusion of appellate review. *See State v. Bangert,* 131 Wis. 2d 246, 278–79, 389 N.W.2d 12, 28 (1986) (intentional failure by the judge to comply with plea hearing procedures "could be grounds for judicial discipline").

132

garb of "abuse of discretion" or "error-laden form" and the like. To permit appeals under those circumstances would not only ignore the clear legislative mandate against these appeals but would transform sentencing guidelines from tools whose usefulness appropriately varies with the circumstances into mere rigid recipes. This would ultimately reduce, not increase, fairness by obliterating *McCleary*'s emphasis on individualized sentencing. As explained by Chief Justice Heffernan, who dissented from the court's refusal to assume responsibility for the promulgation of the sentencing guidelines, appellate review of sentences should focus on the *McCleary* standards and not on "whether a guideline was followed." *Felony Sentencing Guidelines,* 120 Wis. 2d at 209, 353 N.W.2d at 799 (Heffernan, C.J., dissenting).

> Sentencing guidelines are not designed to, and would not, operate to limit or restrain the sentencing discretion of a trial judge. Their purpose is to aid the trial judge in the exercise of that discretion. The legislation specifically provided that failure to follow guidelines does not establish a right of a convicted felon to appeal. Appeals would continue to be judged on the basis of fidelity to the standards of *McCleary*—not on whether a guideline was followed. Guidelines are not to be controlling.

*Ibid.*[7] Since we have already determined in Part IIA above that the court appropriately exercised its discretion based on the proper factors, Halbert's sentence must be affirmed.

*By the Court.*—Judgment and order affirmed.

---

[7] The legislation already had been enacted when *Felony Sentencing Guidelines* was issued. 1983 Wis. Act 371.