STATE of Wisconsin, Plaintiff-Respondent,

v.

Randy B. SPEER, Defendant-Appellant.†

Supreme Court

*No. 91-2523-CR. Oral argument May 26, 1993.—Decided June 23, 1993.*

(Also reported in 501 N.W.2d 429.)

†Motion for reconsideration filed July 12, 1993.

1102

1104

1106

1107

1108

1109

For the defendant-appellant there were briefs by *John R. Davis,* Madison and oral argument by *John R. Davis.*

For the plaintiff-respondent the cause was argued by *Sharon Ruhly,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

Amicus curiae brief was filed by *Frank Remington,* Professor of Law and *Walter J. Dickey,* Professor of Law, Madison for Legal Assistance to Institutionalized Persons.

WILLIAM A. BABLITCH, J.   This case was certified to this court to resolve a perceived disparity in Wisconsin case law concerning the admission of "other crimes" evidence. According to the court of appeals, some case law suggests that in deciding whether to admit other crimes evidence the circuit court should predispose itself to exclude the evidence, while other case law indicates that the circuit court should begin with a presumption in favor of its admissibility. Additionally, we are asked to decide whether a circuit court's compliance or noncompliance with the sentencing guidelines statute can provide a defendant with a basis for an appeal.

We conclude that the admissibility of other crimes evidence is not controlled by predispositions or presumptions, but rather by a set of well-established rules: The Wisconsin Rules of Evidence. Our case law indicates as much. The purportedly disparate language found in the case law does not address presumptions and is not contradictory. Rather, it discusses separate sections of the rules. Furthermore, as explained in detail below, we conclude that the circuit court did not erroneously exercise its discretion in this case in admitting evidence of Speer's prior conviction for burglary.

We further conclude that the sentencing guidelines statute, sec. 973.012, Stats., unambiguously places a duty on a circuit court to consider the sentencing guidelines

when imposing a sentence and to state on the record its reasons for deviating from the guidelines. The statute further provides that a defendant has no right to appeal a sentence *solely* because the sentence exceeds the guidelines. However, the statute does not deprive an appellate court of jurisdiction to consider whether the sentencing court erroneously exercised its discretion by failing to consider the guidelines or failing to state on the record why it departed from the guidelines. Thus, the question of whether a circuit court has complied with the mandates of sec. 973.012 is an appealable issue that is determined by an appellate court by examining the entire record. We conclude that the circuit court in this case complied with sec. 973.012 and properly exercised its sentencing discretion under *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

Accordingly, we affirm the circuit court in all respects.

The facts for the basis of this appeal are these. Evidence at Speer's trial elicited certain relevant facts. The home of Dorothy and Charles Cosner was burglarized on September 21, 1990, sometime between 11:00 a.m. and 1:00 p.m. Sometime between 12:00 noon and 1:30 p.m., Speer left jewelry taken from the Cosner's home at a pawnshop. The Cosner's home was located between Janesville Wisconsin, and Albany, Wisconsin just off Britt and Fenrick roads. The Cosner's home could not be seen from the road, but it had a "For Sale" sign posted at the corner of Britt Road and Fenrick.

At Speer's trial for the burglary of the Cosner residence and the theft of the items taken from their home, the circuit court admitted evidence of Speer's prior conviction in California for a daytime burglary of a home which had a "For Sale" sign posted in the front yard. Speer was convicted of burglary and theft and was sen-

tenced to ten years imprisonment and five years probation consecutive to the ten years imprisonment. Further facts, as necessary for the disposition of this case, will appear throughout this opinion.

We turn first to the issue of whether the law concerning the admissibility of other crimes evidence creates either a presumption of exclusion or a presumption of admissibility.

## I. OTHER CRIMES EVIDENCE

Section (Rule) 904.04(2), Stats., which governs the admissibility of other crimes evidence, states:

**904.04  Character evidence not admissible to prove conduct; exceptions; other crimes.**

. . .

**(2)  Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As our case law indicates, the statute provides that the general rule is one of exclusion: other crimes evidence is not admissible to prove a person's character in order to show that the defendant acted in conformity therewith. *See State v. Plymesser,* 172 Wis. 2d 583, 592, 493 N.W.2d 367 (1992); *State v. Fishnick,* 127 Wis. 2d 247, 253, 378 N.W.2d 272 (1985); *State v. Rutchik,* 116 Wis. 2d 61, 67, 341 N.W.2d 639 (1984). However, as the second sentence of the rule indicates, other crimes evidence is admissible "when offered for some purpose other than

to prove the general criminal disposition of the accused."
*Rutchik,* 116 Wis. 2d at 68. Once an appropriate objection has been made to the admission of other crimes evidence, the burden is on the proponent of the evidence, in this case the State, to show that the other crimes evidence is relevant to one or more named admissible purposes. *Id.* If relevancy for an admissible purpose is established, the evidence will be admitted unless the opponent of the evidence can show that the probative value of the other crimes evidence is substantially outweighed by the danger of undue prejudice. Section (Rule) 904.03, Stats.[1] "The probative value of other crimes evidence 'depends in part upon its nearness in time, place and circumstances to the alleged crime or element sought to be proved.' " *Rutchik,* 116 Wis. 2d at 68.

Speer argues that our statement that the general rule is one of exclusion indicates a presumption against the admissibility of other crimes evidence. He notes that this expression of a presumption is at odds with the court of appeals' decisions in *Lievrouw v. Roth,* 157 Wis. 2d 332, 350, 459 N.W.2d 850 (Ct. App. 1990); and *State v. Grande,* 169 Wis. 2d 422, 434, 485 N.W.2d 282 (Ct. App. 1992), wherein the court stated that the "rules . . . favor admissibility."

■■■■ The admission of other crimes evidence is not controlled by presumptions or predispositions, but rather it is controlled by the Wisconsin Rules of Evidence. Our case law correctly notes that the first sentence of sec. (Rule) 904.04(2), Stats., provides a rule of exclusion;

---

[1] Section 904.03, Stats., provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

other crimes evidence is excluded when it is offered to prove the criminal disposition of the defendant. The case law in no way indicates that a circuit court should predispose itself against the admission of other crimes evidence. To the extent that Speer reads our statements to indicate such a presumption, he misinterprets our case law and reads a presumption into language that was intended merely to express the rule as provided under sec. (Rule) 904.04(2).

The court of appeals' statement that the "rules favor admissibility" is similarly an expression of what the rules themselves already point out; other crimes evidence is admissible for the relevant admissible purposes other than to show the defendant's disposition to commit a crime. In other words, sec. 904.04(2), Stats, favors admissibility in the sense that it mandates the exclusion of other crimes evidence in only one instance: when it is offered to prove the propensity of the defendant to commit similar crimes.

Similarly, sec. (Rule) 904.03, Stats., favors admissibility in that it mandates that other crimes evidence will be admitted unless the opponent of the evidence can show that the probative value of the evidence is *substantially* outweighed by unfair prejudice. The term "substantially" indicates that if the probative value of the evidence is close or equal to its unfair prejudicial effect, the evidence must be admitted. As with this court's statement that "the general rule is one of exclusion," the court of appeals' statements in *Lievrouw* and *Grande* merely explain secs. (Rules) 904.04(2) and 904.03. The court of appeals' statements were not intended to erroneously indicate that a court should begin an analysis of

1115

other crimes evidence with a presumption in favor of its admissibility.

In sum, the law concerning the admissibility of other crimes evidence creates neither a presumption of exclusion nor a presumption of admissibility. Rather, the admissibility of other crimes evidence is controlled by the circuit court's neutral application within its discretion of the well-established rules of evidence which we have set forth in detail above.

We now turn to the merits of this case to determine the validity of the admission of Speer's California conviction for burglary. Our rules for reviewing evidentiary rulings are well established:

> the trial court's determination will be upheld where the court exercised its discretion according to accepted legal standards and in accordance with the facts of record. We will not find an abuse of discretion where a reasonable basis exists for the trial court's determination. But the record must reflect that discretion was exercised, including evidence that the trial judge undertook a reasonable inquiry and examination of the facts as the basis for his decision. The inquiry on review is not whether this court, 'ruling initially on the admissibility of the evidence, would have permitted it to come in. . . .' *Fishnick*, 127 Wis. 2d at 257 (citations omitted).

For Speer to prevail on review that the other crimes evidence was inadmissible, we must conclude that the circuit court erroneously exercised its discretion in applying the rules governing the admission of other crimes evidence. With respect to sec. (Rule) 904.04(2), Stats., which asks whether the California burglary is admissible for a purpose other than to show the defen-

dant's disposition to commit a crime, the circuit court concluded that the California conviction was relevant as proof of identity.[2]

To be admissible for the purpose of identity, similarities must exist between the "other act" and the offense for which the defendant is being tried. *Fishnick,* 127 Wis. 2d at 247. "The threshold measure for similarity with regard to identity is nearness of time, place, and circumstance of the other act to the crime alleged." *State v. Kuntz,* 160 Wis. 2d 722, 746-47, 467 N.W.2d 531 (1991). Whether there is a concurrence of common features is generally left to the sound discretion of the circuit courts. *Id.*

The State sets forth features common to the circumstances of the Cosner burglary and the California burglary. It notes that both burglaries were committed during the daylight hours, both were burglaries to a residential dwelling, and both were burglaries to homes that had "For Sale" signs in the front. Furthermore, the State points out that the California burglary and the Cosner burglary were near in time. The California burglary occurred approximately two years prior to the Cosner burglary, and Speer was incarcerated during a portion of this short gap. *See Rutchik,* 116 Wis. 2d at 75 ("periods of confinement will not be included in computing the time between incidents.").

---

[2] Although the circuit court at one point indicated that the evidence fell within both the identity and the plan exceptions to preclusion, other parts of the record support the defendant's contention that it ruled the evidence admissible based on the identity exception only. For example, in the court's curative instruction to the jury it indicated that the jury could consider the evidence as relevant to identity; it did not mention consideration of the evidence as relevant to the defendant's plan.

Given the nearness in time and the points of congruence, the circuit court had a rational basis for concluding that the similarities between the acts constituted enough of an imprint of the defendant that the other crime evidence was relevant to the issue of identity. Accordingly, we uphold the circuit court's ruling to admit the other crime for the purpose of identity.

The second rule, sec. 904.03, Stats., requires a circuit court to consider and determine " 'whether the prejudice of other-crimes evidence is so great as compared with its relevancy and the necessity for its admission in the particular case as to require exclusion.' " *Kuntz,* 160 Wis. 2d at 748. The circuit court in this case admitted evidence of the 1988 California conviction after concluding that its probative value outweighed its prejudicial nature. The probative value of evidence is dependent in part upon its nearness in time, place, and circumstance to the alleged crime sought to be proved. As noted earlier, the circumstances of the two burglaries were considerably similar and near in time. Evidence of the conviction had substantial probative value.

In cases in which other acts evidence is admitted to show identity, the danger exists that the jury will convict the accused on improper considerations such as the defendant's propensity to commit a crime. However, recognizing this potential misuse of the evidence, the circuit court in this case warned the State that it was going to give a curative instruction to the jury on the proper use of the California conviction, and the court did so at trial. Those instructions helped alleviate and limit the potential for unfair prejudice. Under these circumstances, we cannot say that the circuit court erroneously

exercised its discretion when it considered the prejudice that would result from this evidence. The court concluded that the probative value of the evidence outweighed the unfair prejudice due to the significant similarity of the burglaries. Under the facts of this case, it was not an erroneous exercise of discretion for the circuit court to conclude that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice.

## II.   SENTENCING GUIDELINES

The next issue concerns the meaning of sec. 973.012, Stats.; the statute which governs the use of the Wisconsin sentencing guidelines (guidelines) by circuit court judges in this state. A recent Wisconsin Law Review sets forth in detail the history and development of the guidelines:

> The felony sentencing guidelines were developed by the Advisory Committee for the Wisconsin Felony Sentencing Guidelines Project in 1980. They were a compilation of average felony sentences in Wisconsin from 1977–1980. The guidelines for each crime used two matrices, accounting for various characteristics of the offense and of the offender, to show the range of sentences imposed and the percentage of cases where the offender was incarcerated.
> Various counties implemented the guidelines on a voluntary basis in 1981 and 1982. In 1983, the Advisory Committee requested that the Wisconsin Supreme Court mandate the use of the guidelines and require a court which deviated from the guidelines to state its reasons for the departure. The court refused. It did, however, order that statistical data on sentencing be collected and disseminated to all judges for

its informational value. *In re Felony Sentencing Guidelines,* 113 Wis. 2d 689, 335 N.W.2d 868 (1983)

In 1984, the Wisconsin Supreme Court refused to promulgate its own felony sentencing guidelines after the legislature authorized it to do so. As a consequence, the power to promulgate sentencing rules passed to a sentencing commission. *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 353 N.W.2d 793 (1984). Katherine R. Krause and Kim E. Patterson, Comment, *Wisconsin Sentence Modification: A View From the Trial Court,* 1989 Wis. L. Rev. 441, 448, n.28.

The legislature created the Wisconsin Sentencing Commission and required the Commission to formulate, by rule, sentencing guidelines. *See* secs. 973.01, 973.011, Stats., and sec. 14, 1983 Wis. Act 371. The Commission has prepared the Wisconsin Sentencing Guidelines Manual, which the Commission periodically updates. According to a recent annual report by the Sentencing Commission, sentencing guidelines for 18 felony offense types are in statewide use. State of Wisconsin Sentencing Commission, *Annual Report* at p. 2 (1992).

In *State v. Halbert,* 147 Wis. 2d 123, 132, 432 N.W.2d 633 (Ct. App. 1988), the District I court of appeals interpreted the last sentence of sec. 973.012, Stats., as precluding review of a circuit court's alleged failure to consider the guidelines and/or to place its reasons for deviating from the guidelines on the record:

> [A] trial court's compliance or non-compliance with sec. 973.012, Stats. [use of sentencing guidelines], is not an appellate issue . . . because the Court of Appeals has no jurisdiction. *Id.* (Footnote omitted).

This certification asks us to address whether *Halbert* is a correct statement of the law.[3]

In order to interpret sec. 973.012, Stats., we must first resort to the language of the statute itself. *In Interest of P.A.K.*, 119 Wis. 2d 871, 878-79, 350 N.W.2d 677 (1984). If the meaning of the statute is clear, we will not look outside the statute to ascertain its meaning. *Id.* at 878. If the statute is ambiguous, we ascertain the legislature's intent by examining "the scope, history, context, subject matter and object of the statute." *Id.* "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in either two or more senses." *Id.* at 878-79.

Section 973.012, Stats., provides:

> **973.012  Use of guidelines by judges.** A sentencing court, when imposing a sentence, shall take

---

[3] We note that the State is correct that the defendant's appeal to the court of appeals did not raise direct questions concerning the interpretation of sec. 973.012, Stats. In fact, during oral arguments, the defendant's counsel acknowledged that he was surprised to see that the issue concerning sec. 973.012 was certified to this court because his appeal was based entirely on an erroneous exercise of discretion under *McCleary*, 49 Wis. 2d 263. It appears that the court of appeals raised the issue of sec. 973.012 based upon statements made by the circuit court in response to the defendant's argument that the aggravating circumstances given by the circuit court on the guideline scoresheet were inappropriate sentencing factors in this case. As explained below, those statements may have lead the court of appeals in this case to believe that the circuit court did not follow the dictates of sec. 973.012. Despite the questions concerning which issues were raised by the defendant in his appeal, in our discretion, we decide all of the issues concerning sec. 973.012. *See State v. Schumacher*, 144 Wis. 2d 388, 424 N.W.2d 672 (1988).

the guidelines established under s. 973.011 into consideration. If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines. There shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines.

We conclude that the language of sec. 973.012 is clear and unambiguous. In plain terms, the statute places a duty on a circuit court to consider the sentencing guidelines when imposing a sentence, and to state on the record its reasons for deviating from the guidelines. *See American Family Ins. Co. v. Milwaukee,* 148 Wis 2d 280, 285, 435 N.W.2d 280 (Ct. App. 1988) (" 'shall' is presumed to be mandatory when it appears in a statute.").

Furthermore, we agree with District IV in its certification request that the legislature did not intend by the language of the last sentence of the statute to preclude appellate review of a sentence imposed without consideration of the sentencing guidelines. The last sentence of the statute is unambiguous and means what it says; a defendant has no right to appeal a sentence *solely* because the sentence exceeds the guidelines. Section 973.012, Stats., does not deprive an appellate court of jurisdiction to consider whether the sentencing court erroneously exercised its discretion by failing to follow the statutory mandate to consider the sentence guidelines and state on the record its reasons for deviating from the guidelines. An appellate court must review the entire record to ascertain whether the circuit court has complied with these statutory mandates, regardless of any statements to the contrary found in *Halbert,* 147

1122

Wis. 2d 123. To the extent *Halbert* indicates otherwise, it is overruled.

Concerns that these statutory mandates will infringe upon the sentencing discretion of the circuit court are unfounded. Indeed, circuit courts should welcome the sentencing guidelines as a useful tool in carrying out its awesome responsibility of imposing fair sentences on Wisconsin's criminals. In its certification request, the court of appeals in this case provided an excellent explanation of the sentencing guidelines and their useful purposes:

> The guidelines are in the form of a grid or matrix which accounts for variation in an offender's prior record and in the severity of the offense. WISCONSIN SENTENCING GUIDELINES MANUAL 1-1 (July 1992). Each grid or matrix [found on the guideline scoresheet] asks questions and assigns a weight in two categories: Criminal History Scoring and Severity of Offense Scoring. However, each matrix lists a number of mitigating circumstances and aggravating circumstances. In addition, the sentencing judge may list any other factors which he or she considered in departing from the sentencing guidelines. One of the further duties of the Wisconsin Sentencing Commission is to collect, develop and maintain statistical information relating to sentencing practices and other dispositions of criminal complaints. Section 973.01(1)(c), Stats.

> Thus, the sentencing guidelines serve several important functions . . . if the sentence exceeds the guidelines' recommendation, the defendant knows the aggravating circumstances which led the sentencing court to impose its sentence. . . . if the sentence falls outside the guidelines, the public is informed as to what mitigating or aggravating circumstances the court considered in exercising its discretion. . . . requiring the sentencing court to state its reasons for

sentencing outside the guidelines ... is likely to result in more uniform compliance with the reporting requirements. Finally, requiring the sentencing court to consider the guidelines and state its reasons for departing from the guidelines will facilitate review and may, in fact, deter appeals from sentences.

In addition, the Statement of Policy Underlying the Sentencing Guidelines which was adopted by the Advisory Committee for the Wisconsin Felony Sentencing Guidelines' project on October 29, 1982, and endorsed by the Wisconsin Sentencing Commission on June 14, 1985, also thoroughly explains the important functions of the sentencing guidelines:

The independence of the judiciary and the legitimate exercise of judicial discretion is necessary to maintain the balance of power among the branches of government. The judiciary is cognizant, however, that it must function within established rules and precedents to maintain public trust in the integrity of the judicial process. No judge is a law unto himself/herself. Nowhere is this more evident than in the criminal law.

The Wisconsin Felony Sentencing Guidelines System is designed to allow the exercise of judicial discretion while reducing variance by providing guideline sentences for similar offenders who commit similar offenses. These guidelines reflect previous sentencing practices in Wisconsin, and are a starting point for the exercise of judicial discretion in a particular case. Room is left for unique offenders or circumstances by providing the judge an opportunity to articulate reasons when she or he sentences outside the guidelines.

The ultimate responsibility in imposing sentence must and should remain with the sentencing judge.

The judge must weigh, consider and apply competing values in circumstances as diverse and complex as each individual offender. To dispel any perception of unequal treatment in sentencing, these guidelines have been developed to assist the sentencing judge charged with that difficult duty. Wisconsin Sentencing Guidelines Manual, at ii (January 1991).

In summary, we hold that sec. 973.012, Stats., is clear and unambiguous. It contains three sentences, and each means precisely what it says.

The first sentence reads: "A sentencing court, when imposing a sentence, shall take the guidelines established under s. 973.011 into consideration." This means that the sentencing court must "consider" the guidelines, no more and no less. The court must be aware of the guidelines and consider them when imposing sentence. It does not mean that the sentence imposed must fall within the guidelines. That is within the sound discretion of the sentencing court.

The second sentence reads: "If the court does not impose a sentence in accordance with the recommendations in the guidelines, the court shall state on the record its reasons for deviating from the guidelines." This means that if the sentencing court in the exercise of its discretion imposes a sentence outside the guidelines, it must state its reasons for doing so on the record. The reason is simple: a reviewing court on appeal must be able to review the sentencing court's discretionary action. Without reasons on the record, a reviewing court has nothing to review. *See McCleary,* 49 Wis. 2d 263.

The third sentence reads: "There shall be no right to appeal on the basis of the trial court's decision to

render a sentence that does not fall within the sentencing guidelines." This means precisely what it says: if the only stated reason for the appeal is that the sentence was not within the guidelines, there can be no appeal at all. This sentence serves to emphasize that a sentencing court is not bound to impose a sentence within the guidelines. The guidelines are exactly that: a guide, not a mandate.

We now turn to the question of whether the circuit court in this case complied with sec. 973.012, Stats. The defendant concedes that the circuit court in this case considered the guidelines when imposing Speer's sentence.

At Speer's postconviction hearing, Speer argued that the aggravating circumstances checked off by the circuit court on the sentencing guideline scoresheet were inappropriate factors to be considered in this case. In response to this attack, the circuit court stated the following:

> I don't accept as valid your argument; in fact, anything relating to the sentencing matrix. The sentencing matrix . . . is not now, will not in the future, and has not in the past [been] of any part of the sentencing procedure. It is a statistical analysis which is sent to the State. . . .
>
> My signature may appear on the bottom of it, but it's mandatory that we file those. It's not binding on this Court and does not give all of the reasons. In fact, I, as a routine, do not put all the reasons I sentence a person on that form.

The circuit court's statements are clearly inaccurate to the extent that they indicate that the sentencing guidelines are not a part of the sentencing procedure. Furthermore, standing alone, they might lead one to believe that the court did not, in fact, consider the guidelines. How-

1126

ever, when read as a whole, the record indicates that the circuit court in this case made itself aware of what the guidelines said concerning a defendant in Speer's position and considered the guidelines when imposing Speer's sentence.

At sentencing, the guidelines were first brought to the attention of the circuit court by the prosecutor when he argued that the guidelines did not adequately take into account Speer's status as a repeater:

> In all, I think that due to the fact that he is a repeater, the sentencing guidelines don't really take into consideration whether someone is a repeater. They are based on the idea that it's possible to get ten years in prison, the maximum under the sentencing guidelines. The maximum is like six and a half years. So here we have got someone with a prior burglary and he spent a lot of time in custody since that last burglary. . . . So I would think that a sentence in the order of 12 years incarceration in the penal—prison would be appropriate. . . .

The guidelines were again mentioned and brought to the court's attention when defense counsel stated the following:

> Her report suggests six years, which is right at the higher end of the matrix; and if you look at the matrix, the upper limit of that is 72 months or 78 months as opposed to ten years. I think that the difference there is for aggravating factors. If the court finds a number of aggravating factors, the court can then sentence somebody beyond the matrix. But I think the court should have good, sufficient reasons if the court's going to go beyond the matrix. . . .

1127

These statements clearly made the court aware of what the guidelines provided. Furthermore, Judge Daley signed and completed the guideline scoresheets for both the theft and the burglary charge, noting the aggravating circumstances on both. Given these circumstances, we conclude that the circuit court did not erroneously exercise its discretion with respect to consideration of the guidelines.

We similarly conclude that the circuit court stated on the record its reasons for deviating from the guidelines.[4] At Speer's sentencing, the circuit court, although never explicitly mentioning deviation from the guidelines, set forth a detailed explanation of the reasons for the sentence it imposed. Such reasons included societal deterrence, individual deterrence, fear of recidivism, and the prior criminal history of the defendant. In addition, on the guidelines scoresheet, the circuit court checked off three aggravating circumstances as reasons for its deviation from the guidelines. Under these circumstances, there was no erroneous exercise of discretion because the circuit court stated on the record its reasons for deviating from the guidelines.

The State contends that the guideline scoresheet is not a part of the sentencing record, and thus the reasons given on the form cannot form the basis for an appeal based on an erroneous exercise of discretion under *McCleary*. The logical extension of this argument is that the guideline scoresheet is similarly not a part of the record for purposes of determining the circuit court's compliance with sec. 973.012, Stats. In a similar vein, Speer contends that the scoresheet is a part of the

---

[4] The sentencing guideline matrix provided a 64-68 month incarceration for the burglary charge in this case. The court sentenced Speer to 120 months, thus deviating from the guidelines.

record, but the circuit court erred by giving different reasons on the scoresheet for its sentence than those given during the sentencing hearing.

We conclude that both the scoresheet and the transcript of the sentencing hearing comprise the record of the sentencing for purposes of determining the circuit court's proper exercise of discretion under both *McCleary* and sec. 973.012, Stats.[5] In addition, although the preferable practice is for the circuit court to state all of its reasons for its sentence at both the sentencing hearing and on the guidelines, the failure to do so, by itself, is not an erroneous exercise of discretion. By the same token, however, we emphasize that if reasons are given on the scoresheet in addition to the reasons given at the sentencing hearing, those additional reasons comprise a part of the record and will be evaluated under the *McCleary* standards. In addition, we warn circuit courts against the practice of not fully explaining all of their reasons for a sentence during the sentencing hearing. Merely checking off aggravating factors on a scoresheet will make it difficult for a court to ascertain whether the sentencing court has exercised its discretion on a rational and explainable basis under *McCleary*.

Having concluded that the reasons given on the sentencing guideline scoresheet are a part of the sentencing record, we must address three additional arguments

---

[5] The Wisconsin Sentencing Guidelines Manual, at 1–7 (July 1992) provides:

When the sentence imposed is different from the guideline sentence, the appropriate aggravating or mitigating circumstances must be noted on the back of the scoresheet by the sentencing judge. This is for the purpose of updating and revising the guidelines. Refer to the scoring commentaries for more information regarding disagreement with the guideline recommendation.

made by the defendant regarding the factors set forth by the court in this case.

First, the defendant points to the fact that the circuit court checked on the scoresheet the attitude of the defendant as an aggravating factor, and contends that the circuit court erroneously exercised its discretion in considering the defendant's unwillingness to admit guilt as an aggravating factor. We disagree.

"[A] defendant must not be subject to greater penalties for having exercised his right against self-incrimination." *State v. Baldwin*, 101 Wis. 2d 441, 457, 304 N.W.2d 742 (1981).

> 'A trial judge may, but he need not, take into consideration such expressions [refusals to acknowledge guilt] as indicative of the likelihood that the rehabilitory process hoped for in the criminal law has commenced; but where, as here, the defendant refused to admit his guilt, that fact alone cannot be used to justify incarceration rather than probation.' *Id.*

A court must not give undue and almost overwhelming weight to a defendant's refusal to admit guilt. *Id.* However, when a " 'trial court merely . . . [states] the fact of . . . [a] defendant's lack of remorse, repentance and cooperation,' " *Id.* there is no erroneous exercise of discretion. Furthermore, we have concluded that even where refusal to admit guilt is a factor, among several others, which contributed in part to the judge's sentencing decision there is no erroneous exercise of discretion as long as the court considered a variety of factors, giving no undue or overwhelming weight to any one in particular. *Id.* at 458–59.

1130

■ The transcript of the sentencing hearing in this case reflects that the circuit court in this case did not attempt to compel an admission of guilt from Speer, and it did not punish him for, or give great weight, to his refusal to admit guilt. The court devoted most of its attention to the defendant's character and potential for rehabilitation given his past history of criminal conduct. We agree with Speer that the circuit court in this case satisfied *McCleary's* requirement that in imposing a sentence a court consider the gravity of the offense, the character of the offender, and the need for public protection. If the refusal of Speer to admit guilt played any role at all in this case it was viewed as indicative of the likelihood of rehabilitation. We find no erroneous exercise of discretion.

Speer also contends that the court inappropriately considered that one of the burglaries involved the theft of a gun. We agree with the State that the basis for the defendant's claim is unclear. The defendant concedes that the circuit court gave a reasoned and rational explanation of its sentencing under the requirements of *McCleary*, and we agree. Thus, it appears that Speer must be arguing that consideration of the theft of a firearm is an inappropriate factor as a matter of law, rather than a contention that the court did not adequately explain its reasoning for imposing its sentence. His argument is without merit.

■ The defendant does not dispute that one of the read-in burglaries involved the theft of a gun. It is proper for a sentencing court to consider uncharged and unproven offenses, and it was certainly proper for the court to have taken the theft of the gun into consideration in this case. *See Elias v. State,* 93 Wis. 2d 278, 284,

286 N.W.2d 559 (1980). Furthermore, at the postconviction motion, the circuit court noted that the theft of the firearm was not a significant factor in his decision. We conclude that the circuit court did not erroneously exercise its discretion.

■

Lastly, in addition to claiming that the circuit court took inappropriate factors into consideration, Speer contends that the circuit court erred in failing to consider the diminished responsibility of the defendant due to "neurological defect." This contention is also without merit. There was no evidence before the sentencing court to indicate that the defendant, in fact, suffers from neurological damage. The defense's Alternative Presentence Investigation indicated that neurological damage will reduce responsibility somewhat, but it did not indicate that Speer, in fact, suffered from neurological damage. The circuit court in this case correctly exercised its discretion based upon relevant law and upon the information the court had before it. We affirm.

*By the Court.*—The judgment of the circuit court is affirmed.

Justice JON P. WILCOX took no part in this decision.

DAY, J., *(concurring).* I concur in the mandate which affirms the judgment of conviction of the defendant by the circuit court.

I also concur in Part I, "OTHER CRIMES EVIDENCE" in Justice Bablitch's opinion at 1113. However, I do not concur in Part II, "SENTENCING GUIDELINES" (at 1119 et seq.) for the reason I do not agree with Justice Bablitch's conclusions on the reviewability of sentences where a trial judge may exceed the guidelines. The guidelines statute cited by Justice Bab-

litch at 1121–1122 states: "973.012 . . . There shall be no right to appeal on the basis of the trial court's decision to render a sentence that does not fall within the sentencing guidelines."

Sentencing guidelines are quite controversial. Twice this court refused to adopt sentencing guidelines.

*In The Matter of Implementation of Felony Sentencing Guidelines,* 113 Wis. 2d 689, 335 N.W.2d 868 (1983). The legislature in response enacted 1983 Wis. Act. 371 which authorized the Supreme Court to promulgate rules for sentencing guidelines for use by Wisconsin judges in sentencing convicted felons if we chose to do so. If we declined, authority to promulgate sentencing guidelines was given to a sentencing commission attached to the Wisconsin Department of Administration. The majority of this court by a vote of 6–2 declined to establish such guidelines. *In The Matter of Judicial Administration: Felony Sentencing Guidelines,* 120 Wis. 2d 198, 353 N.W.2d 793 (1984).

The resulting statute represented a legislative compromise.

In a very well reasoned concurrence Justice William Bablitch explained why it would be inappropriate for this court to promulgate guidelines. He was joined by Justices Day, Callow, Ceci and Steinmetz.

Among other things, Justice William Bablitch wrote:

> That confusion existed in 1971, and continues to exist today. The legislature has maintained indeterminate sentencing by maintaining the same system of parole. It has not enacted minimum mandatory sentencing. It has not given over to the judiciary the responsibility for establishing penalties for criminal offenses. Because of the availability of parole, the sentencing court has no power to determine the

1133

length of sentence actually served below the maximum imposed despite the public's belief that this power rests in the sentencing court. Until the legislature chooses to change that system, I do not believe this court should be a party to a procedure which will continue to mislead the public as to which branch of government is responsible for establishing criminal penalties and the actual sentence served by a convicted defendant. If this court accepted the legislative invitation and promulgated the sentencing guidelines, I believe we would simply continue to add to this confusion. *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198 at 206–207.

Justice Bablitch added, "This court has consistently adhered to *McCleary* since 1971 [49 Wis. 2d 263 (1971)], and nothing in 1983 Wis. Act. 371 will change that."

I agree, *McCleary* is still the standard to examine any sentence imposed, not adherence to or consideration of or explaining deviation from the sentencing guidelines. They are not part of an appellate courts review. The only "discretion" used in sentencing subject to appellate review are the *McCleary* standards. That's why the legislature said there should be no appeal for failure to follow them.

Justice Bablitch's opinion, in this case, is critical of *State v. Halbert,* 147 Wis. 2d 123, 432 N.W.2d 633 (Ct. App. 1988) which said at 132: "Simply put, a trial court's compliance or non-compliance with sec. 973.012, Stats., is not an appellate issue here, because the Court of Appeals has no jurisdiction."

I believe the *Halbert* interpretation of the statute in question is correct. It has been the law of this state for five years. If the legislature disagreed they could amend the law. They have not done so.

I believe that what Justice Bablitch's opinion says in Part II about using the guidelines is dicta. He cor-

rectly found the judge had used the guidelines so use was no longer an issue. The "advice" about the detailed methods judges should follow in using the guidelines to avoid being overruled on appeal was mere dicta. The results of not following the no appeal provision of sec. 973.012, Stats., was foreseen by the court of appeals in *Halbert,* 147 Wis. 2d at 132.

> Inventive counsel may attempt to disguise appeals that are, in reality, based on "the trial court's decision to render a sentence that does not fall within the sentencing guidelines," sec. 973.012, Stats., in the garb of "abuse of discretion" or "error-laden form" and the like. To permit appeals under those circumstances would not only ignore the clear legislative mandate against these appeals but would transform sentencing guidelines from tools whose usefulness appropriately varies with the circumstances into mere rigid recipes. This would ultimately reduce, not increase, fairness by obliterating *McCleary's* emphasis on individualized sentencing. As explained by Chief Justice Heffernan, who dissented from the court's refusal to assume responsibility for the promulgation of the sentencing guidelines, appellate review of sentences should focus on the *McCleary* standards and not on "whether a guideline was followed."

For these reasons I do not go along with Part II of Justice Bablitch's opinion, in this case. If the law on guidelines is to be changed it should be done by the legislature, not by this court.

I am authorized to state that Justices STEINMETZ and CECI join this concurrence.

LOUIS J. CECI, J. *(concurring).* I concur in the mandate. While I join in the discussion of "OTHER

CRIMES EVIDENCE" contained in section I of Justice William A. Bablitch's opinion, I do not join in the discussion of "SENTENCING GUIDELINES" contained in section II of that opinion.

I reject in its entirety Justice Bablitch's discussion of the sentencing guidelines. I believe that whether a circuit court considers the guidelines or states its reasons for deviating from them is irrelevant when determining whether that circuit court has properly exercised its discretion in sentencing pursuant to *McCleary v. State,* 49 Wis. 2d 263, 182 N.W.2d 512 (1971).

I am authorized to state that Justice DONALD W. STEINMETZ joins this concurrence.

I also join in Justice ROLAND B. DAY'S concurring opinion.