PER CURIAM.
¶1 Carl L. Barrett appeals a judgment, entered upon a jury's verdicts, convicting him of one count of first-degree reckless homicide and three counts of first-degree recklessly endangering safety, all as a party to the crimes and with the use of a dangerous weapon. See WIS. STAT. §§ 940.02(1), 941.30(1), 939.05, 939.63(1)(b) (2013-14).[1] He also appeals the order denying his postconviction motion. Because the trial court properly exercised its discretion when it admitted other acts evidence and because Barrett's combined total sentence was neither unduly harsh nor unconscionable, we affirm.
I. BACKGROUND
¶2 Five-year-old Laylah Petersen was killed when she was shot in the head after a barrage of gunshots were fired through the front window of her grandparents' home. At the time, her grandfather, grandmother, and sister were with her in the front living room. Police found twelve cartridge casings at the scene, six casings each from two different nine-millimeter handguns.
¶3 According to the complaint, as the police investigated, they learned that Petersen's death was the result of a botched revenge shooting that targeted the wrong house. Police identified Barrett and Arlis Gordon as the shooters, who were attempting to avenge the death of Gordon's brother, and Paul Farr as the man who drove Barrett and Gordon to the scene. Police further determined that Divonte Forbes, who was in the car with the men, had loaned a nine-millimeter green camouflage handgun to Gordon.
¶4 The complaint further alleged that immediately after the shooting, the four men went to a home where Barrett laid a black nine-millimeter Hi-Point handgun on the table and Gordon did the same with the nine-millimeter green camouflage handgun. Barrett and Gordon then began talking and laughing about the shooting.
¶5 The men later learned that Petersen had been shot and killed in the home that they had shot into that night. The complaint stated that Barrett told Forbes that he and Gordon intended to hit someone else's house-a home four blocks from Petersen's grandparents' home. Afterward, Barrett told Forbes to keep his mouth shut.
¶6 The State charged both Barrett and Gordon with first-degree reckless homicide as a party to a crime with the use of a dangerous weapon. It charged Farr with two counts of harboring or aiding a felon. The State did not charge Forbes in connection with Petersen's death.
¶7 Following unsuccessful plea negotiations, the State filed an amended information charging Barrett with first-degree reckless homicide and three additional counts of first-degree recklessly endangering safety as a party to a crime with the use of a dangerous weapon, one charge each for Petersen's grandparents and sister. The jury convicted Barrett of all the charges. The trial court imposed sentences totaling sixty-five years of initial confinement and thirty-two years of extended supervision.
¶8 Barrett filed a postconviction motion. He argued that he was entitled to a new trial because the probative value of the other acts evidence that the trial court deemed admissible was outweighed by its prejudicial effect. Alternatively, Barrett sought sentence modification. The trial court denied Barrett's motion, and this appeal follows.
¶9 Additional background information is set forth below as necessary.
II. DISCUSSION
A. The trial court properly admitted the other acts evidence.
¶10 On appeal, Barrett challenges the trial court's decision to admit other acts evidence against him. He argues that the other acts evidence was used to prove, circumstantially, that one of the guns used during the Petersen shooting was Barrett's black Hi-Point handgun. According to Barrett, the evidence made it impossible for the jury not to find that he was a bad person and was, therefore, guilty of the crimes charged. He additionally asserts that there was more evidence presented about the other two shootings than about the underlying homicide and that the sheer volume of the evidence had the effect of piling on.
¶11 Admissibility of other acts evidence is determined by assessing whether: (1) the evidence is offered for a permissible purpose under WIS. STAT. § 904.04(2) ; (2) it is relevant under WIS. STAT. § 904.01 ; and (3) its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the jury, needless delay, or unnecessary repetition under WIS. STAT. § 904.03. State v. Sullivan , 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). Factors to consider when assessing the probative value of other acts include the other act's "nearness in time, place, and circumstances to the alleged crime[.]" Whitty v. State , 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967). Section 904.04(2) favors admissibility of other acts evidence unless it is offered to prove the propensity of the defendant to commit similar acts. See State v. Speer , 176 Wis. 2d 1101, 1114-15, 501 N.W.2d 429 (1993).
¶12 We review the trial court's admission of other acts evidence under the erroneous exercise of discretion standard. See Sullivan , 216 Wis. 2d at 780. A trial court properly exercises discretion when it considers the facts of record under the proper legal standard and reasons its way to a rational conclusion. See id.
¶13 Prior to trial, the State moved to join Barrett's case with another case where Barrett was charged with a revenge-style shooting while using a nine-millimeter Hi-Point handgun ("the R.S. shooting"). The State represented in its motion that Barrett shot at R.S. in retaliation for a stabbing incident. This shooting took place one month prior to the Petersen shooting.
¶14 The State additionally moved to admit other acts evidence of Barrett's participation in a separate shooting incident that occurred the morning Petersen was shot ("the T.G. shooting"). In its motion, the State relayed that Forbes saw Barrett fire the black nine-millimeter Hi-Point handgun at the home of T.G. Forbes acknowledged that he instigated the shooting because he was in a feud with someone he believed might have been inside T.G.'s home.
¶15 In its motion, the State detailed the results of ballistics testing, which revealed that a nine-millimeter casing located at the scene of the R.S. shooting came from the same firearm as a bullet located at the scene of the T.G. shooting and six of the twelve nine-millimeter casings located at the scene of the Petersen shooting.
¶16 At the motion hearing, the trial court did not join the cases involving Barrett, but it allowed the State to introduce other acts evidence from both the R.S. and T.G. shooting incidents at Barrett's trial.[2] The trial court found that the evidence was offered for a proper purpose and noted the similarities between the underlying crimes and the other acts. The trial court held that the probative value of the T.G. shooting was overwhelming to show context and Barrett's method of operation because the two incidents occurred on the same day, both involved shots fired into homes, and both involved a firearm linked to Barrett. The trial court explained: Barrett, "both as part of his motive and part of his [modus operandi] seems to be the avenger of people he knows" and "he goes along, fires his nine-millimeter firearm into houses to avenge some wrong." The trial court additionally found that the risk of unfair prejudice could be reduced with a cautionary jury instruction.
¶17 As to the R.S. shooting, the trial court concluded that the evidence was probative because of its similar context and the method of operation or identity. The trial court described Barrett as follows:
[T]he avenger avenging people he knows who have some reason to have a grievance, but he does it in this unique way where he brandishes and fires his nine-millimeter Hi-Point firearm. And the ballistics evidence ties that in. But it shows this overall conduct or activity by the defendant and it goes to his identity.
In concluding that the R.S. shooting evidence was not unfairly prejudicial, the trial court explained that compared to the underlying case, the evidence was "not so shocking or horrific" that it would "influence the outcome by improper means."
¶18 Barrett does not argue that the trial court erroneously exercised its discretion in finding that the other acts evidence was offered for a permissible purpose and was relevant. Instead, he argues only that its probative value was substantially outweighed by its prejudicial effect. Evidence that is unfairly prejudicial "has a tendency to influence the outcome by improper means or ... appeals to the jury's sympathies, [to] arouse[ ] its sense of horror, provoke[ ] its instinct to punish or otherwise cause[ ] a jury to base its decision on something other than the established propositions in the case." Id. at 789-90. Barrett bears the burden of showing its prejudicial effect. See State v. Marinez , 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399.
¶19 Barrett's showing amounts to conclusory statements about the perceived effect that the other acts evidence had on the jury. He does not develop an argument as to why the other acts evidence was allegedly cumulative or unnecessary or as to why the cautionary instructions that the trial court gave to the jury on two separate occasions were ineffective to reduce the risk of unfair prejudice. See State v. Davidson , 2000 WI 91, ¶78, 236 Wis. 2d 537, 613 N.W.2d 606 (a cautionary instruction can "limit the danger of unfair prejudice"). Barrett has not met his burden of showing prejudicial effect.
¶20 The trial court applied the proper legal standard and came to a conclusion a reasonable judge could reach when it admitted the other acts evidence in this case.[3]
B. Barrett's total sentence was not unduly harsh or unconscionable.
¶21 Barrett's second argument is that his combined total sentence of ninety-seven years of imprisonment is unduly harsh and severe. This is especially so, he argues, in light of the sentences his co-actors received. Particularly as to Gordon, Barrett suggests that the only reason he received a heftier sentence was because he exercised his right to have a jury trial. Otherwise, according to Barrett, everything the trial court said at his sentencing applied equally to Gordon; consequently, Barrett asserts that they should have received similar sentences.
¶22 "The mere fact that the ... sentences are different is not enough to support a conclusion that [Barrett]'s sentence is unduly disparate." See State v. Perez , 170 Wis. 2d 130, 144, 487 N.W.2d 630 (Ct. App. 1992). So long as the disparity is not arbitrary or based on irrelevant considerations, the disparity is not actionable. See Ocanas v. State , 70 Wis. 2d 179, 186-87, 189, 233 N.W.2d 457 (1975). Barrett "bears the burden of establishing that the disparity in sentences was arbitrary or based upon considerations not pertinent to proper sentencing." See Perez , 170 Wis. 2d at 144.
¶23 A trial court may not revise its sentence merely upon reflection but may consider whether the sentence imposed was unduly harsh or unconscionable. See State v. Grindemann , 2002 WI App 106, ¶21, 255 Wis. 2d 632, 648 N.W.2d 507. We review a trial court's conclusion that its sentence was not unduly harsh for an erroneous exercise of discretion. See id. , ¶30.
¶24 The co-actors were sentenced for different crimes after entering guilty pleas and had different degrees of culpability: Forbes, who was in the car, was not charged in connection with the Petersen shooting[4] ; Farr, the driver, pled guilty to one count of harboring a felon, and the court imposed and stayed a ten-year prison sentence and placed him on probation for five years; and Gordon, the other shooter, pled guilty to second-degree reckless homicide and three counts of second-degree recklessly endangering safety and was sentenced to forty-nine years of imprisonment.
¶25 By his own acknowledgement, "[t]he disparity in regard to the sentences given to Forbes and Farr may be attributed to the fact that they had not actually been involved in the shooting at that residence," even though they participated in other ways. The fact that Forbes's and Farr's sentences are different is not enough to support a conclusion that Barrett's sentence is unduly disparate. See Perez , 170 Wis. 2d at 144.
¶26 According to Barrett, however, Gordon's sentence of thirty years of initial confinement and nineteen years of extended supervision was an "unexplainable disparity." We are not convinced.
¶27 Barrett went to trial on more serious charges and faced more than 117 years in prison whereas Gordon pled guilty to lesser charges and faced sixty years of imprisonment. Gordon accepted responsibility, and the trial court remarked that it was giving him credit for having done so. In contrast, the trial court noted that Barrett did not accept responsibility and did not express remorse. Barrett and Gordon were not similarly situated defendants and their sentences properly reflect that they were convicted of different crimes with different degrees of culpability. Barrett has not met his burden of establishing that the disparity in sentences was arbitrary or based upon improper considerations. See Perez , 170 Wis. 2d at 144.
¶28 The trial court set forth a sound rationale to support Barrett's sentences and properly exercised its discretion.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

The Honorable Jonathan D. Watts ruled on the State's motion to admit other acts evidence.

Because we conclude the trial court properly admitted the other acts evidence, we need not consider the parties' arguments regarding harmless error. See Gross v. Hoffman , 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need be addressed).

Forbes was not charged in the Petersen shooting; instead, Forbes was sentenced in connection with the T.G. shooting.