ESTATE OF ZASTROW: GLEN and MICHAEL NELSON, by Guardian *ad litem*, Appellants, v. CITY BANK OF PORTAGE, Executor, Respondent.

*No. 330. Argued March 7, 1969.—Decided April 4, 1969.*
(Also reported in 166 N. W. 2d 251.)

The cause was submitted for the appellants on the brief of *Arthur W. Swanson* of Portage, guardian *ad litem,* and for the respondent on the brief of *William Leitsch* of Portage.

WILKIE, J. The issue before this court is whether sec. 48.92 (2), Stats., bars adopted beneficiaries from taking under a will where they are designated as "children of the body" of their natural parent.

The will of Rose Zastrow provided that if she were predeceased by her nephew, Robert Jimson, his share of her estate would pass "to the child or children of his . . . body." Robert Jimson was the natural father of Glen and Michael. However, after divorcing Robert Jimson, the mother of Glen and Michael married Roger Nelson, who adopted the boys. Thereafter Robert Jimson died.

The will sufficiently identified "the children of the body" so that the two children would take under the will notwithstanding the fact that sec. 48.92 (2), Stats., as construed by this court in *Estate of Topel,*[1] would have

---

[1] (1966), 32 Wis. 2d 223, 145 N. W. 2d 162.

barred the children from recovering under the law of distribution and descent if Rose Zastrow had died intestate.

The trial court held, in effect, that sec. 48.92, Stats., operated to remove Glen and Michael from the class of "children of the body" of Robert Jimson and were therefore precluded from taking under the will.

Sec. 48.92 (2), Stats., reads as follows:

"After the order of adoption is entered the relationship of parent and child between the adopted person and his natural parents, unless the natural parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist."

The trial court relied upon *Estate of Topel,* wherein this court discussed the effect of sec. 48.92, Stats., upon the legal status of the adopted child:

"Sec. 322.07, Stats., was repealed by ch. 575, Laws of 1955, and sec. 48.92 was enacted as a part of the Children's Code. The exception retaining the right of an adopted child to inherit from his natural parents was removed and the language of the effect of adoption was recast in general terms of status rather than in terms of specific rights. Sub. (1) of sec. 48.92 deals with the rights which flow from the adoptive status. Sub. (2) deals with the opposite side of the coin and declares what rights and relationships of the natural status are terminated and lost upon assuming the adoptive status. This manner of expressing the rights of inheritance of an adoptive person follows the general pattern of modern adoption statutes in not specifically or completely defining the incidents of the relation between an adopted child and its kindred by adoption.

"Modern adoption statutes generally establish a status, the incidents of which are in the nature of a natural relationship of parent and child. 2 Am. Jur. (2d), Adoption, p. 941, sec. 100. There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. We think the intent of sec. 48.92, Stats., from its language is to effect upon

adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin." [2]

Further in that opinion the court stated that the:

". . . purpose of adoption is to create a relationship of parent and child between persons who are not so related by blood and to completely change the status of a person adopted from a child of his natural parents to a child of his adoptive parents. It was recommended that the status of an adopted person be completely changed from that of a child of his natural parents to that of a child of his adoptive parents and all inheritance rights by and from the natural relatives be cut off. The report points out that this change in the effect of adoption is made by sec. 48.92, Stats., . . ." [3]

But although sec. 48.92, Stats., changed the legal status of the adopted person, it could not have barred the testatrix from transferring her property on death to the two grandnephews pursuant to her will. In fact, this court recognized the limitations of sec. 48.92 in testamentary situations when it said further in the *Topel Case* as follows:

"The right of a person to transfer his property on death to whom he wishes is not enshrined in the law of descent and distribution in any form but rather in the right to make a will. It is only upon the failure to exercise this right that the law of descent and distribution becomes applicable." [4]

When testatrix drew her will in November of 1956, Glen was five years old and Michael was almost four. There can be no doubt that at that time the "children of the body" of Robert Jimson were Glen and Michael. It

---

[2] *Id.* at pages 226, 227.

[3] *Id.* at page 228.

[4] *Id.* at page 230.

was clearly the intent of the testatrix that the boys be beneficiaries of her estate.

The question then becomes whether the intent of the testatrix was affected by the legal effect of sec. 48.92, Stats., which operated to change the status of Glen and Michael from that of children of Robert Jimson to children of Roger Nelson. We conclude that it was not. As a matter of fact the boys were and still are readily identified as "children of the body" of Robert Jimson.

A portion of the report of the Wisconsin Legislative Council set forth in *Estate of Topel* states that " '[i]f the relative wishes the adopted person to inherit from him, he can include that person in the will.' " [5] It is our opinion that the language employed by testatrix includes Michael and Glen in her will.

The trial court never reached and decided the further question of the proper rate of taxation of the inheritance of the two grandnephews. We, therefore, do not reach the question and return the matter for its consideration of that issue and for other proceedings in this estate.

*By the Court.*—Judgment reversed.

HEFFERNAN, J. (*concurring*). I agree with the conclusion reached by the majority. There appears to be no doubt that as a matter of fact the phrase, "children of the body," clearly identifies not a class but Glen and Michael as the intended recipients of the testatrix's bequest. They are identifiable, however, not because of the biological relationship to their father, but because that is what Rose Zastrow chose to call them at the time she wrote her will. If, from extrinsic circumstances, we were able to determine the identity of the intended recipients, it would have made no difference what she chose to call them. The *Will of Adler* (1966), 30 Wis. 2d 250, 140 N. W. 2d 219, makes it clear that, following an adoption,

---

[5] *Id.* at page 228, note 3.

the prior biological relationship has no legal relevance. These children had no legal status relating them to either their natural father or their father's aunt as "children of the body" following their adoption by Nelson. They are identifiable in this instance not because of the legalistic class term used to describe them, but because we know that the testatrix specifically intended these two boys as beneficiaries. The description of the legal class (children of the body) would not have permitted an afterborn grandchild, after adoption by another, to take his father's share, for he could not have been the specific object of testatrix's bounty at the time the will was drafted. If the bequest were to a class, the bequest would fail under the facts herein.

I believe that the majority would follow this same rationale, but I am concerned that the language of the majority, if taken literally, would lead to the erroneous conclusion that some status was conferred upon these beneficiaries from the very terms of the will, rather than as the result of the testatrix's provable subjective intent as extrinsically proved.