92 TP 4 IN the INTEREST OF ANGEL LACE M., a Child
Under the Age of 18:

GEORGINA G., Petitioner-Appellant,†

v.

TERRY M., Respondent. [Case No. 92–1369.]

92 AD 9 IN the INTEREST OF ANGEL LACE M., a Child
Under the Age of 18:

ANNETTE G., Petitioner-Appellant,

v.

TERRY M., Respondent. [Case No. 92–1370.]

Supreme Court

*Nos. 92–1369, 92–1370. Oral argument March 2,
1994.—Decided June 8, 1994.*

(Also reported in 516 N.W.2d 678.)

† Motion for reconsideration denied September 21, 1994.

496

498

499

500

501

For the petitioners-appellants there were briefs filed (in the supreme court and court of appeals) by *Judith Sperling Newton, Carol M. Gapen* and *Stafford, Rosenbaum, Rieser & Hansen,* Madison and oral argument by *Judith Sperling Newton.*

Amicus curiae briefs were filed (in supreme court and court of appeals) by *Barbara J. Becker, Margaret H. Schulz* and *Becker & Schulz, S.C.,* Milwaukee for the American Civil Liberties Union of Wisconsin Foundation.

Amicus curiae brief was filed by *Karen M. McGaffey, Beth S. Ginsberg* and *Bogle & Gates; Annette L. Hayes* and *Heller, Ehrman, White & McAuliffe,* all of Seattle, WA and *Abby Abinanti* and *National Center for Lesbian Rights,* San Francisco, CA and *Leslie D. Shear,* Madison for The National Center for Lesbian Rights, Lambda Legal Defense and Education Fund,

Inc., Gay and Lesbian Advocates and Defenders, and Northwest Women's Law Center.

For the respondent-designate there was a brief filed by *John S. Skilton, Roberta F. Howell, Amy E. Dombrowski* and *Foley & Lardner,* Madison and oral argument by *John S. Skilton.*

STEINMETZ, J. This case presents the following issues for review:

(1) Do the Wisconsin adoption statutes permit a third party to adopt the minor child of the third party's nonmarital partner?

(2) If the Wisconsin adoption statutes prohibit this adoption from taking place, do these statutes violate the constitutional rights of either the minor child or the third party?

On February 17, 1992, Annette G. filed a petition to adopt Angel Lace M., the daughter of Annette's partner, Georgina G. The circuit court for Brown County, the Honorable Richard J. Dietz, denied the petition by order dated April 9, 1992. The court of appeals certified the appeal for review by this court. We now affirm the order of the circuit court. We hold that this adoption is not permissible under ch. 48, Stats. We further hold that the relevant provisions of ch. 48 do not violate the constitutional rights of either the minor child or the third party.

Angel was born on March 10, 1986. On September 20, 1988, Georgina and Terry M. adopted Angel. Georgina and Terry were married at the time of the adoption. They separated in February, 1990, and divorced in June of that same year. Aside from paying court-ordered child support, Terry has played no part in Angel's life since late 1990.

In June, 1990, Georgina and Angel began living with Annette. The two women have shared equally in raising Angel since that time. Georgina and Annette symbolically solemnized their commitment to each other by partaking in a marriage-like ceremony in Milwaukee on August 11, 1991.[1]

On February 17, 1992, Annette filed a petition in the Brown county circuit court to adopt Angel. Simultaneously, Georgina filed a petition to terminate Terry's parental rights and a petition for the adoptive placement of Angel with Annette. No party filed a petition to terminate Georgina's parental rights.

Judge Dietz held a hearing on the various petitions on March 25, 1992. At the hearing, Terry signed a statement consenting to the termination of his parental rights and testified that his consent was both voluntary and knowing. The Community Adoption Center filed a report with the court recommending the adoption. In addition, a social worker from the center testified at the hearing that the termination of Terry's parental rights and the adoption of Angel by Annette would be in Angel's best interests.

Based on the testimony and other evidence presented at the hearing, the circuit court determined that the proposed adoption would be in Angel's best interests. However, the court also determined that pursuant to ch. 48, Stats., Annette is not competent to adopt Angel and Angel is not competent to be adopted by Annette. Hence, the court denied each of the petitions by order dated April 9, 1992.

---

[1] Wisconsin does not recognize same-sex marriages. *See* sec. 765.001(2), Stats., *Phillips v. Wisconsin Personnel Commission,* 167 Wis. 2d 205, 213 n.1, 482 N.W.2d 121 (Ct. App. 1992). Hence, under the laws of Wisconsin, Georgina and Annette are not married. As a result, Annette is not Angel's stepparent.

Annette and Georgina appealed the circuit court's order. The court of appeals certified the appeal for review by this court. We accepted the certification and now affirm the order of the circuit court.[2]

The petitioners argue that the circuit court should have granted Annette's petition for adoption because the court found that the adoption is in Angel's best interests. *See* sec. 48.01(2), Stats.[3] There is no doubt that a court must find that an adoption is in the best interests of the child before the court may grant the petition for adoption. However, the fact that an adoption—or any other action affecting a child—is in the child's best interests, by itself, does not authorize a court to grant the adoption. This court recognized as much in the context of child custody. In *In re Marriage of Groh v. Groh,* 110 Wis. 2d 117, 126, 327 N.W.2d 655 (1983), we rejected the argument that a trial court is entitled to impose any conditions on custody as long as the custody order is in the best interests of the child:

> If the trial court had the power to make any order it pleased so long as the order could somehow be justified by recitation of the rubric 'in the best

---

[2] Though invited by this court, the attorney general declined to participate in this review to defend the order of the circuit court and the constitutionality of the adoption statutes. Therefore, the court appointed the law firm of Foley and Lardner, by Attorney John S. Skilton, to act as respondent-designate and defend those interests.

[3] Section 48.01(2), Stats., provides as follows:

> **(2)** This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

interests of the children,' the limits the legislature placed on the court's exercise of power in custody matters would be meaningless. Legal custody is subject to the provisions of court orders as sec. 48.02(12), Stats., states. However, it is subject only to orders that the court is empowered to make.

■■■■

Were we to allow a court to grant an adoption petition any time the adoption is in the best interests of the child, there would be no need for the plethora of adoption statutes other than sec. 48.01(2), Stats. "[A] statute should not be construed so as to render any portion or word surplusage." *State v. Ross*, 73 Wis. 2d 1, 5, 242 N.W.2d 210 (1976). The petitioners' argument—that a court should grant a petition for adoption as long as it is in the child's best interests—would render several sections of ch. 48 surplusage. Hence, we reject this argument.

■■■■

"[B]efore a court may make a finding that a second parent adoption is in a child's best interests, it must first determine whether it has the power to grant such an adoption under the existing adoption statutes." Emily C. Patt, *Second Parent Adoption: When Crossing the Marital Barrier is in a Child's Best Interests*, 3 Berkeley Women's L.J. 96, 111 (1987–88) (citing ch. 48, Stats.). "Adoption proceedings, unknown at common law, are of statutory origin and the essential statutory requirements must be substantially met to validate the proceedings." *Estate of Topel*, 32 Wis. 2d 223, 229, 145 N.W.2d 162 (1966). Accordingly, before we apply the best interests standard in this case, we must determine whether Annette's proposed adoption of Angel satisfies the statutory requirements for adoption.

In Wisconsin, the requirements for adoption are found in ch. 48, Stats. We therefore apply the relevant provisions of ch. 48 to the proposed adoption. The application of a statute to a given set of facts is a question of law. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). Hence, we need not give deference to the decisions of the trial court. *Id.* Our purpose in interpreting a statute is to give effect to the intent of the legislature, with the plain language of the statute acting as our primary guide. *Id.*

Section 48.82, Stats.,[4] controls who may adopt a minor. A party petitioning to adopt a minor must satisfy two requirements. First, the party must be a resident of Wisconsin. Annette satisfies this first requirement. Second, the party must fit the description from either sec. 48.82(1)*(a)* or sec. 48.82(1)*(b)*. Annette does not qualify under sec. 48.82(1)*(a)* because she is not legally "the husband or wife" of Georgina who is the

---

[4] Section 48.82, Stats., provides as follows:

**48.82 Who may adopt. (1)** The following persons are eligible to adopt a minor if they are residents of this state:

(a) A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the minor.

(b) An unmarried adult.

**(3)** When practicable and if requested by the birth parent, the adoptive parents shall be of the same religious faith as the birth parents of the person to be adopted.

**(4)** No person may be denied the benefits of this subchapter because of a religious belief in the use of spiritual means through prayer for healing.

**(5)** Although otherwise qualified, no person shall be denied the benefits of this section because the person is deaf, blind or has other physical handicaps.

**(6)** No otherwise qualified person may be denied the benefits of this subchapter because of his or her race, color, ancestry or national origin.

"parent of the minor." However, Annette does fit the description in sec. 48.82(1)*(b)* because she is "[a]n unmarried adult."

For the adoption to be valid, not only must Annette qualify as a party who may adopt Angel, but Angel must also be eligible for adoption. Section 48.81, Stats.,[5] controls who may be adopted. A minor must also satisfy two requirements to be eligible for adoption. Angel satisfies the first requirement of the statute because she was present in the state of Wisconsin at the time Annette filed the petition for adoption. *See* sec. 48.81*(2).* It is less clear whether Angel satisfies the second requirement. Pursuant to sec. 48.81*(1),* a minor may only be adopted if her "parental rights have been terminated . . .."[6] Angel's adoptive father, Terry, has consented to the termination of his parental rights. Georgina's parental rights, on the other hand, remain intact.

The petitioners claim that sec. 48.81(1), Stats., is ambiguous. According to the petitioners, the statute could mean that Angel is eligible for adoption only if

---

[5] Section 48.81, Stats., provides as follows:

**48.81   Who may be adopted.** Any minor who meets all of the following criteria may be adopted:

**(1)**   Except as provided under s. 48.839 (3) (b) or if an appointment of guardianship has been made under s. 48.831, a minor whose parental rights have been terminated under subch. VIII or in another state or a foreign jurisdiction.

**(2)**   A minor who is present within this state at the time the petition for adoption is filed.

[6] We first note that this statute is poorly worded. A minor does not have parental rights that may be terminated. Rather, her parents possess these rights. The legislature must have intended to state that a minor may be adopted if her "parents' rights have been terminated . . .."

the rights of *both* of her parents have been terminated. Or, it could mean that she is eligible for adoption as long as the rights of *at least one* of her parents have been terminated. The petitioners ask this court to construe the statute liberally to further the best interests of Angel, pursuant to sec. 48.01(2), and accept the second interpretation of the statute.

Under this second interpretation of the statute—that a minor is eligible for adoption as long as the rights of *at least one* of her parents have been terminated—a minor would be eligible for adoption when the rights of only one of her parents are terminated. The minor would be eligible to be adopted even if the remaining parent is legally fit to raise the child alone and prefers to raise the child alone. Ostensibly, a complete stranger could petition to adopt a minor who is a member of this stable family; and, at least pursuant to sec. 48.81, Stats., the proposed adoption would be permissible. The legislature could not have intended to declare a minor eligible for adoption under those circumstances. This would be an absurd result.[7] This court will not construe a statute so as to work absurd or unreasonable results. *Estate of Evans,* 28 Wis. 2d 97, 101, 135 N.W.2d 832 (1965). Hence, we hold that pursuant to sec. 48.81(1), a minor is not eligible for adoption unless the rights of both of her parents have been terminated.[8] Because Georgina's parental rights

---

[7] This court acknowledges that such an adoption may be prohibited by other provisions in the adoption statutes. However, this particular section should not be interpreted to allow this absurd result.

[8] This holding obviously does not apply to stepparent adoptions. In a stepparent adoption, the minor is eligible to be adopted if the rights of one of her parents are terminated. Sec-

remain intact, Angel is not eligible to be adopted by Annette.

Section 48.92, Stats.,[9] also stands in the way of Annette's proposed adoption of Angel. This statute severs the ties between the birth parent[10] and the adopted

tion 48.81, Stats., does not clearly provide for this exception in the case of stepparent adoptions. However, it is clear from surrounding statutes that the legislature intended to sanction stepparent adoptions. *See* secs. 48.92(2) ("unless the birth parent is the spouse of the adoptive parent") and 48.835(3)(b) ("[i]f the person filing the adoption petition is a stepparent"). The same cannot be said for the proposed adoption in this case. No neighboring statutes indicate that the legislature intended to allow any adoptions, other than stepparent adoptions, unless the rights of both of the child's parents have been terminated.

[9] Section 48.92, Stats., provides as follows:

**48.92 Effect of adoption.** (1) After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

(2) After the order of adoption is entered the relationship of parent and child between the adopted person and the adoptive person's birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist. Notwithstanding the extinction of all parental rights under this subsection, a court may order reasonable visitation under s. 48.925.

(3) Rights of inheritance by, from and through an adopted child are governed by s. 851.51.

(4) Nothing in this section shall be construed to abrogate the right of the department to make payments to adoptive families under s. 48.48 (12).

[10] This case involves "[t]he adoption of an adopted person . . . [and thus] the references to parent and birth parent [in the statutes] are to adoptive parent." *See* sec. 48.96, Stats.

minor after a court enters the order of adoption.[11] Pursuant to sec. 48.92(2), if the circuit court grants Annette's petition to adopt Angel, "all the rights, duties and other legal consequences of [Georgina's relationship with Angel] *shall* cease to exist." (Emphasis added.) If the legislature had intended to sanction adoptions by nonmarital partners, it would not have mandated this "cut-off" of the "rights, duties and other legal consequences" of the birth parents in these adoptions.

The petitioners argue that, despite the use of the word "shall," this "cut-off" provision is directory, not mandatory, under Wisconsin law.[12] " 'Shall' will be construed as directory if necessary to carry out the intent of the legislature." *State v. R.R.E.,* 162 Wis. 2d 698, 707, 470 N.W.2d 283 (1991). This interpretation ignores two basic rules of statutory interpretation. First, " ' "shall" is presumed to be mandatory when it appears in a statute.' " *State v. Speer,* 176 Wis. 2d 1101, 1122, 501 N.W.2d 429 (1993) (quoting *American Family Ins. Co. v. Milwaukee,* 148 Wis. 2d 280, 285, 435

---

[11] The statute does exempt the birth parent from this "cut-off" provision in stepparent adoptions. However, because Georgina and Annette are not married, this exception does not apply.

[12] The petitioners cite to decisions from other states that have found similar "cut-off" provisions are directory. *See Adoption of B.L.V.B.,* 628 A.2d 1271 (Vt. 1993); *Matter of Adoption of Evan,* 583 N.Y.S.2d 997 (Sur. 1992). While this court may look to decisions from other jurisdictions when interpreting similar statutes, our primary purpose in interpreting a statute "is to determine the legislative intent and the policy behind the statute." *State v. Hopkins,* 168 Wis. 2d 802, 815, 484 N.W.2d 549 (1992). Although we take note of these decisions, they shed little light on the intent of the Wisconsin legislature.

N.W.2d 280 (Ct. App. 1988)). The petitioners' argument does not overcome this presumption. Second, where the legislature specifically enumerates certain exceptions to a statute, this court presumes that the legislature intended to exclude other exceptions based on the rule *expressio unius est exclusio alterius. State ex rel. Harris v. Larson,* 64 Wis. 2d 521, 527, 219 N.W.2d 335 (1974). ("Under this maxim, if [a] statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded." Black's Law Dictionary 581 (6th ed. 1990)). In this case, the legislature specifically exempted stepparent adoptions by stating that the "cut-off" provision applies "unless the birth parent is the spouse of the adoptive parent . . .." *See* sec. 48.92(2), Stats. This is evidence that the legislature did not intend to exempt other adoptions, including those by nonmarital partners. *See Harris,* 64 Wis. 2d at 527.

We find more compelling evidence that the "cut-off" provision is mandatory when we read the relevent sections of ch. 48, Stats., together. "When multiple statutes are contained in the same chapter and assist in implementing the chapter's goals and policy, the statutes should be read *in pari materia*[13] and harmonized if possible." *In Interest of R.W.S.,* 162 Wis. 2d 862, 871, 471 N.W.2d 16 (1991). (Footnote added.) In this case, reading sec. 48.92 together with secs. 48.81 and 48.82 and harmonizing the three statutes leads to the

---

[13] *In pari materia* refers to statutes relating to the same subject matter or having the same common purpose. Black's Law Dictionary 791. As a rule of statutory construction, *in pari materia* requires a court to read, apply and construe statutes relating to the same subject matter together. *Id.*

conclusion that the "cut-off" provision of sec. 48.92 is mandatory.

For this court to find that ch. 48, Stats., sanctions the proposed adoption, we must accept the petitioners' interpretation of *both* secs. 48.81(1) and 48.92(2). The petitioners interpret sec. 48.81(1) as permitting a minor to be adopted as long as the rights of *at least one* of the minor's parents are terminated. If we accept this interpretation, then a minor who still has one parent could be adopted. Section 48.82(1)(a) clearly allows "[a] husband and wife jointly" to adopt a minor. The petitioners next interpret the "cut-off" provision of sec. 48.92(2) as directory. If we also accept this interpretation, then the above husband and wife could jointly adopt the above minor without severing the ties between the remaining birth parent and the minor. The minor would then have three parents. Subsequently, a court could terminate the rights of one of the three parents and a second husband and wife could jointly adopt the minor, giving the minor four parents. This process could go on *ad infinitum.* Obviously, the petitioners' interpretations of secs. 48.81(1) and 48.92(2), read *in pari materia,* could lead to absurd results. This court will not construe a statute so as to work absurd or unreasonable results. *Evans,* 28 Wis. 2d at 101.

To avoid this absurd result and to harmonize the rules of statutory construction discussed above, we hold that the "cut-off" provision of sec. 48.92(2), Stats., is mandatory. Hence, Georgina would lose the "rights, duties and other legal consequences of" her relationship with Angel if the circuit court granted Annette's petition to adopt Angel. This result would frustrate rather than further the petitioners' intentions. We also

513

hold that, pursuant to sec. 48.81(1), Angel is not eligible for adoption. Therefore, we conclude that the proposed adoption does not satisfy the essential requirements of the adoption statutes and is, in fact, prohibited by these statutes.[14] The circuit court properly denied the petitions before it despite its finding that the adoption would be in Angel's best interests.

■■■■

The petitioners next argue that if the relevant provisions of ch. 48, Stats., do not authorize a circuit court to grant this petition for adoption, then these statutory provisions violate the constitutional rights of either

---

[14]*Amici curiae*—the National Center for Lesbian Rights, Lambda Legal Defense and Education Fund, Inc., Gay and Lesbian Advocates and Defenders and the Northwest Women's Law Center—suggest that this court could view Annette's petition for adoption as a joint petition filed by Annette and Georgina subsequent to the termination of the parental rights of both Georgina and Terry. According to the *amici,* this alternate procedure would avoid the impediments to the proposed adoption presented by secs. 48.81 and 48.92, Stats. At oral argument, the petitioners also advanced this argument. The Supreme Court of Massachusetts recently affirmed an order of adoption based on a similar argument. *Adoption of Tammy,* 619 N.E.2d 315 (Mass. 1993).

The validity of a joint adoption is not before this court. Annette and Georgina did not jointly petition to adopt Angel. Only Annette filed such a petition. Furthermore, no one petitioned for the termination of Georgina's parental rights. Hence, this court will not address this alternate argument. We do note that this court has previously suggested that the validity of a joint adoption by two unmarried individuals is best left to the legislature. *In re Interest of Z.J.H.,* 162 Wis. 2d 1002, 1019 n.11, 471 N.W.2d 202 (1991). Presently, sec. 48.82, Stats., allows adoption only by a single adult, a married couple or the stepparent of the child.

Angel or Annette or both. The constitutionality of a statute is a question of law which we review *de novo. Chappy v. LIRC,* 136 Wis. 2d 172, 184, 401 N.W.2d 568 (1987). In reviewing the constitutionality of a statute, "there is a strong presumption that a legislative enactment is constitutional." *Id.* The party challenging the constitutionality of a statute "must prove beyond a reasonable doubt that the act is unconstitutional." *Id.* at 185. Furthermore, " 'every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality.' " *Id.* (quoting *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973)).

With this heavy burden in mind, we turn to the petitioners' arguments. The petitioners claim that by prohibiting this adoption, secs. 48.81 and 48.92, Stats., deny Angel her right to due process, guaranteed by the Fourteenth Amendment to the United States Constitution, in two ways. First, the petitioners claim that the statutes deprive Angel of her right to have her best interests be the paramount factor in a court's decision regarding Annette's petition for adoption.

■

The requirement of due process applies only to deprivations of property or liberty interests. *Board of Regents v. Roth,* 408 U.S. 564, 569 (1972). The right to have her best interests guide our analysis in this adoption proceeding certainly does not qualify as one of Angel's property interests. In addition, United States Supreme Court jurisprudence makes it clear that this alleged right does not qualify as a liberty interest.

An interest will only qualify as a liberty interest if it is both fundamental and traditionally protected by our society. *Michael H. v. Gerald D.,* 491 U.S. 110, 122 (1989) (Scalia, J., plurality). The right to have a child's best interests be the paramount consideration in the adoption proceedings is neither fundamental nor traditionally protected by our society. Adoption itself is not even a fundamental right. *Lindley for Lindley v. Sullivan,* 889 F.2d 124, 131 (7th Cir. 1989) ("there is no fundamental right to adopt"). It certainly follows that a legislative directive to construe adoption statutes with the child's best interests of paramount consideration is not a fundamental right. Furthermore, because adoption is a relatively recent statutory development, we cannot conclude that adoption has traditionally been protected by our society. Hence, secs. 48.81 and 48.92, Stats., do not deprive Angel of a liberty interest.

In fact, as discussed earlier, the legislature did not intend for this right to attach at all unless the statutory requirements for adoption are satisfied. Because these requirements are not satisfied in this case, Angel never possessed this interest and secs. 48.81 and 48.92, Stats., could not have deprived her of it. We therefore reject this initial attack on the constitutionality of the adoption statutes.

Second, the petitioners argue that by prohibiting this adoption, the relevant statutes deprive Angel of her constitutional right to familial association. Angel's freedom to associate with Annette "receives protection as a fundamental element of personal liberty." *See Roberts v. United States Jaycees,* 468 U.S. 609, 618 (1984). However, as the petitioners acknowledge, the adoption

statutes do not prevent Angel from associating with Annette. These statutes merely prevent Annette and Angel from legally formalizing their relationship. This relationship, between a child and her mother's nonmarital partner, is not one that has traditionally received constitutional protection. "The family unit accorded traditional respect in our society, which we have referred to as the 'unitary family,' is typified, of course, by the marital family, but also includes the household of unmarried parents and their children." *Michael H.,* 491 U.S. at 123 n.3. While Angel's relationship with her mother, Georgina, is constitutionally protected because the two form a "unitary family," her relationship with Annette is not. Thus, we reject this second challenge to the constitutionality of Wisconsin's adoption statutes and hold that these statutes do not violate Angel's right to due process.

*Amicus curiae,* the American Civil Liberties Union of Wisconsin Foundation (ACLU), argues that by prohibiting this adoption, the statutes at issue violate Angel's right to equal protection guaranteed by the Fourteenth Amendment to the United States Constitution. The petitioners join this argument in their reply brief. Both the petitioners and the ACLU claim that the statutory scheme for adoption in Wisconsin sets up two classes of children for the purpose of adoption—children in traditional families and children in nontraditional families. According to this argument, the legislature has chosen to protect the best interests of those children in traditional families while not protecting the best interests of children in nontraditional families.

This argument misinterprets the adoption statutes. The Wisconsin legislature has chosen to

517

differentiate between children "whose parental rights have been terminated" and children who still have parents. One exception has been made for children with stepparents. This legislative scheme does not affect a fundamental right and is not based on a suspect classification. Hence, we must declare the statutes constitutional so long as they are rationally related to a legitimate governmental interest. *Cleburne v. Cleburne Living Center,* 473 U.S. 432, 440 (1985). The Wisconsin adoption statutes are rationally related to the state's interest in protecting the traditional "unitary family." *See Michael H.,* 491 U.S. at 123 n.3. The petitioners and the ACLU have failed to overcome their burden of proving beyond a reasonable doubt that the relevant adoption statutes deprive Angel of her right to equal protection.

■ Finally, the ACLU claims that by prohibiting this adoption, Wisconsin's legislative adoption scheme violates Annette's right to equal protection by discriminating against her on the basis of her sexual orientation and/or her gender. According to the ACLU, if Annette were involved in a heterosexual relationship or if Annette were a man, she would be able to adopt. Contrary to this claim, Wisconsin's adoption statutes do not discriminate on the basis of sexual orientation or gender. Annette may not adopt Angel because Annette and Georgina are not married. Any legitimate argument the ACLU may have should be directed at Wisconsin's prohibition of same-sex marriages, not the adoption statutes. However, this is not a suit involving marriage and the petitioners have not challenged the state's prohibition of same-sex marriages. The adoption statutes do not violate Annette's right to equal protection. Annette is eligible to adopt a child "whose

parental rights have been terminated." That is not the case here. In addition, if Annette were married, she would be eligible to adopt the child(ren) of her spouse. Again, that is not the case here. The Wisconsin legislature has enacted a statutory scheme for adoption that balances society's interest in promoting stable, legally recognized families with its interest in promoting the best interests of the children involved. The adoption proposed in this case does not fall within the confines of this constitutionally valid legislative scheme.

We hold that Angel is not eligible for adoption under sec. 48.81(1), Stats., because her parental rights have not been terminated. Furthermore, the proposed adoption is prohibited because sec. 48.92(2) would sever Georgina's ties with Angel. We also hold that the relevant provisions of ch. 48 do not violate the constitutional rights of either Angel or Annette. Therefore, we affirm the circuit court's order that denied the three petitions before the court.

*By the Court.*—The order of the Brown county circuit court is affirmed.

JANINE P. GESKE, J. *(concurring).* I join in the majority opinion because I believe that it correctly analyzes current Wisconsin law. Although the dissents accurately point out that sec. 48.01(2), Stats., directs us to liberally construe ch. 48 with "[t]he best interests of the child" in mind, we are still bound by the statutory requirements for adoption. *Estate of Topel,* 32 Wis. 2d 223, 229, 145 N.W.2d 162 (1966). Those requirements are not met in this case.

I write separately only to encourage the Wisconsin legislature to revisit ch. 48 in light of all that is occur-

ring with children in our society. The legislators, as representatives of the people of this state, have both the right and the responsibility to establish the requirements for a legal adoption, for custody, and for visitation. This court cannot play that role. We can only interpret the law, not rewrite it.

The purpose of ch. 48 is to provide for the best interests of the children. Fortunately, Angel lives in a home where she is loved and cared for. She currently has a happy, stable life. Many children are not as fortunate as she. We live in a time when many of our children are abused, neglected, and unloved. Many others live in dysfunctional families. These children, who do not have the benefit of adults who will nurture and lovingly discipline them, often become the angry criminals we see in our felony courts.

Hopefully our legislators will continue to work to advance the interests and protection of our children by listening to their constituents, reviewing our current laws, and debating the wisdom of statutory changes. Children cannot protect their own interests. The legislature can protect those interests by vigilantly overseeing the children's code and ensuring a statutory scheme that indeed provides for the best interests of our kids.

I respectfully disagree with Justice Bablitch's view, in his dissenting opinion, that the legislature, by virtue of the language of sec. 48.01, Stats., has transferred its constitutional responsibility of establishing the statutory criteria for adoption to the judicial branch. As the majority opinion points out, if the intent of the legislature were to allow judges to create the legislative requirements for adoption, we would not need the various adoption statutes we have. Majority op. at 506. Instead, the legislature has indeed specifi-

cally set forth the requirements for adoption. We are bound to apply them. The circuit court correctly concluded that those requirements were not met in this case.

HEFFERNAN, CHIEF JUSTICE *(dissenting)*. The issue addressed in this case is whether the Wisconsin statutes governing adoption allow Annette G. to adopt Angel, a child with whom she already has a functional parent-child relationship. The adoption statutes on their face do not address this issue. Therefore, this court must employ accepted canons of statutory construction to interpret the meaning of the adoption statutes. Much has been written about the nature of the canons of construction and the fact that contradictory canons exist that would lead to opposite results if applied to the same statute.[1] In the present case, however, this court is provided with helpful guidance from the legislature on the appropriate canon of construction to apply to the adoption statutes. Section 48.01(2), Stats., states that the children's code, of which the adoption statutes are a part, "shall be liberally construed to effect the objectives contained in this section." Legislative Council notes accompanying the bill in which the children's code was introduced indicate that liberal construction is particularly applicable to the adoption statutes:

---

[1] Perhaps the most well-known article discussing the "thrust and parry" of contradictory canons of construction is Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons About How Statutes Are to be Construed,* 3 Vand. L. Rev. 395 (1950).

Sub. (3) is intended to effect a change in the construction of the adoption statutes. Although the courts have said that in adoption statutes the principal consideration is the best interests of the child, they have also held that the adoption procedure, since it was unknown to the common law, is purely statutory and the statutes must be strictly followed. Sub. (3) provides that the sections in ch. 48 including those on adoption should be liberally construed.

Legislative Council notes accompanying 1955 Senate Bill no. 444, contained in *Wisconsin Legislative Council Reports,* vol. VI, part 1, bill no. 444, at p. 10 (1955) (case citations omitted). Liberal construction of the adoption statutes, then, is the canon this court must employ to effectuate the objectives of the children's code.[2]

Section 48.01(2) adds:

The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

[2] The legislature is most likely to mandate liberal construction in two situations: when setting forth the powers of a governmental body and when establishing social or economic legislation advancing significant public policy objectives. The adoption statutes fit within the second category—liberal construction is mandated in light of the important public policy of the best interests of the child. Other statutes that fit within this second category include: sec. 19.81(4), Stats. (liberal construction of the open meetings statute); sec. 111.31(3) (liberal construction of the statutes prohibiting employment discrimination); sec. 401.102(1) (liberal construction of the Uniform Commercial Code).

In considering the interests of the public in the context of adoption, three additional objectives listed in sec. 48.01(1) of the children's code appear to be applicable:

> (b) To provide for the care, protection and wholesome mental and physical development of children, preserving the unity of the family whenever possible.
>
> . . ..
>
> (f) To assure that children pending adoptive homes will be placed in the best homes available and protected from adoption by persons unfit to have responsibility for raising children.
>
> (g) To provide children in the state with permanent and stable family relationships.

Because the best interests of the child is "paramount", it appears that the legislature deems liberal construction of the statutes particularly appropriate when such construction effectuates the best interests of the child unless the other concerns listed outweigh the child's best interests. This court should interpret the adoption statutes following the approach mandated by the legislature.

In the present case everyone involved agrees that the adoption is in Angel's best interests. After conducting a study of Angel's home a social worker employed by the Community Adoption Center, an agency licensed to place children for adoption, stated that the adoption was in Angel's best interests and recommended that it be approved. In describing Annette's relationship with Angel, the report stated:

> [Annette and Angel] were building a snow fort outside on this worker's home visit day. They play

board games together as well as watching TV, building a fire, etc. Anne[tte] indicates a strong interest in reading to Angel and she is well aware of her progress in school and has no difficulty with disciplining her or with spending time alone with her when [Georgina] is busy with other things. She shows considerable skills in being patient, protective, and accepting of age appropriate behaviors. She is willing to set limits and sees herself as Angel's parent.

The report added that four parties submitting letters of reference described the relationship between Annette and Angel as one of loyalty, responsibility, care and love and recommended that the adoption be permitted.

At the hearing on the petition for adoption, the social worker testified that Angel is a member of a "very stable, happy family unit," adding:

I questioned Ai—[sic] Angel about both of her mothers and she talked very openly about her affectionate feelings for both of them. She also talked about her desire to be adopted and I asked her if she understood what that meant and her—her answer to that was that she would become a [G.] and she is very affectionate toward both of these women and feels very comfortable with them.

Angel's *guardian ad litem* also stated that it would clearly be in Angel's best interests for the adoption to take place. He stated that "the family unit of Georgina and Annette G. clearly is a very loving and nurturing environment" and that the adoption would provide Angel with greater continuity than she had previously known.

The circuit court hearing the petition for adoption made the following finding of fact:

> [Annette] has established a substantial, stable, emotional and financial, parental relationship with [Angel]; in the event that something should happen to [Georgina] . . . there would be increased stability in [Angel's] life if [Annette] had a legal relationship with this child.

The circuit court concluded "that it would be clearly in the best interests of [Angel] for the parental rights of [Terry] to be terminated and for this child to be adopted by [Annette]."

Because no one opposed the adoption when certification was accepted by this court, we undertook the extraordinary procedure of appointing highly competent counsel to act as "devil's advocate" so that we could better examine the merits in an adversarial posture. Even that appointed counsel does not question the circuit court's finding that the adoption would be in Angel's best interests.[3]

In the present case, none of the other interests listed in sec. 48.01(2) preclude liberal construction of

---

[3] This court asked the Department of Justice whether it would appear given the absence of any respondent opposing the positions advanced by the petitioners. The Department of Justice responded as follows:

> Because the cases involve the interpretation of the state's adoption statutes, we have conferred with the Department of Health and Social Services, the agency of state government which administers this body of law, concerning the Court's inquiry. Because the Department of Health and Social Services has advised us that it will not be requesting this Department to move to intervene on its behalf in these proceedings, I am writing to advise the court that we will not be appearing in this matter.

Letter from Robert A. Selk, Assistant Attorney General, Administrator, Division of Legal Services, Department of Justice to Chief Justice Nathan S. Heffernan (Oct. 28, 1993) (on file with the Clerk of the Supreme Court, file 92–1369).

the statute with the paramount consideration being the child's best interests. The interests of Angel's current parents would be furthered by allowing this adoption. Terry and Georgina are Angel's current legal parents. The circuit court found that Terry, Angel's legal father, strongly supports the adoption and has consented to termination of his parental rights.[4] The circuit court added that Terry's relationship with Angel had become increasingly distant, was virtually nonexistent at the time of the hearing and was unlikely to be renewed. Georgina, Angel's legal mother, is one of the petitioners requesting that Annette be allowed to adopt Angel and clearly believes that the adoption is consistent with her own interests.

The second interest, that of the person or persons with whom the child has been placed for adoption, is not at issue in this case. Angel is not being placed outside her present family for adoption—if the adoption is allowed she will remain with Georgina and have a legally-recognized relationship with Annette as well. The third interest, that of the public, is also consistent with Angel's best interests. Given the shrinking percentage of children that are raised in two-parent families,[5] and the shrinking percentage of children who receive even minimally adequate care regardless

---

[4] Hence Terry, although a nominal respondent, is not a party adverse to the petitioners.

[5] Single parent families constitute thirty percent of families and two-thirds of all children will spend some time in a single-parent family before reaching age eighteen. Nancy E. Dowd, *Family Values and Valuing Family: A Blueprint for Family Leave,* 30 Harv. J. on Legis. 335, 353 (1993) (citing U.S. Bureau of the Census, *Household and Family Characteristics* 10 (1990)) (additional citations omitted).

of family structure,[6] the public interest is enhanced by granting legal recognition to two-parent families that do further the express objective in sec. 48.01(1)(g) of "provid[ing] children in the state with permanent and stable family relationships". Because the adoption in this case would further Angel's best interests while either having no effect on or enhancing the additional legislatively-recognized interests, this court should proceed to employ the legislatively-prescribed approach of interpreting the adoption statutes liberally in light of the "paramount consideration" of the best interests of the child.

The first relevant section in the adoption statutes is sec. 48.82(1), Stats., which governs who may adopt. The statute provides:

> The following persons are eligible to adopt a minor if they are residents of this state:
> (a)  A husband and wife jointly, or either the husband or wife if the other spouse is a parent of the minor.
> (b)  An unmarried adult.

Annette meets the sec. 48.82(1)(b) requirement—she is an unmarried adult.

The second relevant statute is sec. 48.81, Stats., which sets forth the criteria governing who may be adopted:

---

[6] Statistics indicate that approximately 2.5 million children are abused each year in the United States. Nat'l Ctr. On Child Abuse Prevention Research, National Comm'n for Prevention of Child Abuse, *Current Trends in Child Abuse Reporting and Fatalities: The Results of the 1990 Annual Fifty State Survey* 3 (Deborah Daro and Karen McCurdy eds., 1991).

Any minor who meets all of the following criteria may be adopted:

(1) Except as provided under s. 48.839(3)(b) or if an appointment of guardianship has been made under s. 48.831, a minor whose parental rights have been terminated under subch. VIII or in another state or a foreign jurisdiction.

(2) A minor who is present within this state at the time the petition for adoption is filed.

The portion of sec. 48.81(1) stating that an eligible minor is one "whose parental rights have been terminated" is ambiguous. The prospective adoptee, the child, does not have parental rights and clearly the statute meant to establish that it is the parental rights of at least one of the minor's parents that must be terminated before a minor is eligible for adoption. The question in the present case is whether sec. 48.81 requires that parental rights of both parents be terminated before a minor is eligible for adoption. Looking solely at sec. 48.81, this court need not employ the legislatively-mandated canon of liberal construction in order to conclude that this statute requires that the parental rights of only one parent be terminated in order for a child to be eligible for adoption in those situations in which the remaining parent supports the adoption. Stepparent adoption is a common form of adoption but would be prohibited if sec. 48.81 is read to require that both parents' parental rights must be terminated before an adoption can take place.

In a footnote, the majority states that sec. 48.835(3)(b),[7] which expressly refers to stepparent

---

[7] Section 48.835(3)(b) provides:

If the person filing the adoption petition is a stepparent with whom the child and the child's parent reside, the stepparent shall file only

adoption, and sec. 48.81(1), read *in pari materia,* clearly allow a minor to be adopted by a stepparent. I agree. However, this conclusion does not preclude further interpretation of sec. 48.81 to determine whether a child may be eligible for adoption in other circumstances in which the rights of only one parent have been terminated. If sec. 48.81 is construed utilizing the canon of liberal construction mandated by the legislature, a child may be eligible for adoption after the rights of only one parent have been terminated as long as the remaining legal parent supports the adoption. Such an adoption will still be subject to all of the additional statutory criteria. Because the legislature mandated liberal construction it is contrary to legislative intent to strictly construe sec. 48.81 as prohibiting adoption when only one parent's rights have been terminated with the exception of adoptions otherwise expressly allowed by the statutes. This court should utilize the guidance the legislature has provided.

The third relevant statute is sec. 48.92, Stats., which provides in relevant part:

**Effect of adoption. . . .**

(2)  After the order of adoption is entered the relationship of parent and child between the adopted person and the adoptive person's birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

Section 48.92 cannot be interpreted to prohibit the adoption in this case. Section 48.92 does not establish

a petition to terminate the parental rights of the parent who does not have custody of the child.

requirements that must be met in order for an adoption to occur; rather, it defines the legal status of the parties after the adoption has been approved. A court granting an adoption is not required to take any action to effectuate sec. 48.92. This court need not determine whether the statute is mandatory or directory because it is not a command but rather a definition of post-adoption status of the family that results from the adoption.

Nonetheless, I will address the argument raised by Georgina and Annette that sec. 48.92 is directory. Following the legislatively-mandated canon that the adoption statutes are to be construed liberally, "shall" should be read as directory rather than mandatory when applied to a current legal parent who is one of the petitioners for adoption and plans to raise the child with the prospective adoptive parent in a nuclear family arrangement. The legislatively-mandated canon of liberal construction requires us to interpret the statute in a way which would, when possible, further the best interests of the child. Construction of "shall" as directory in this case accomplishes precisely that objective. It is contrary to the guidance provided by the legislature to strictly construe sec. 48.92 as requiring the cut-off of a current legal parent's rights when that parent plans to raise the child together with the adoptive parent. Section 48.92 mandatorily defines the status of the parent whose rights are terminated and the adoptive parent who steps into that person's shoes as the legal parent of the child.

Even in the absence of the legislative mandate of liberal construction, the conclusion that "shall" is directory in the limited circumstance set forth above is not inconsistent with the general approach this court takes

to determine whether a statutory provision is mandatory:

> In determining whether a statutory provision is mandatory or directory in character, we have previously said that a number of factors must be examined. These include the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation. (Citations omitted.)

*Eby v. Kozarek,* 153 Wis. 2d 75, 80, 450 N.W.2d 249 (1990) (quoting *State v. Rosen,* 72 Wis. 2d 200, 207, 240 N.W.2d 168 (1976)).

Looking first to the objectives of the adoption statutes, the legislature has provided, in sec. 48.01(2), that the paramount objective is the best interests of the child. That objective is met in the present case by allowing the adoption to occur. As previously discussed the other interests set forth by the legislature, the interests of the parents and the public, are consistent with Angel's best interests. The consequence of a directory interpretation of "shall" as applied to Georgina is that sec. 48.92 would not cut off her rights and the objective of the adoption statutes could thereby be fulfilled. The consequence of the interpretation that "shall" is mandatory is that, were Annette allowed to adopt Angel, then Georgina's rights would be cut off. Considering both objectives and consequences, the directory construction most nearly accomplishes the legislature's intent.

Section 48.92 and its predecessors, sec. 322.07,[8] have been interpreted by this court on occasion, but

---

[8] The version of sec. 322.07, Stats., 1953, in effect immediately prior to passage of sec. 48.92 provided:

generally in cases challenging inheritance rights of adopted persons.[9] These cases do not provide guidance on the issue before us today. In *Stickles v. Reichardt,* 203 Wis. 579, 234 N.W. 728 (1931), this court concluded that sec. 322.07 prohibited enforcement of a contract between a birth father and adoptive parents that allowed the birth father to visit the child after the adoption. The liberal construction of sec. 48.92 properly applied in this dissent is consistent with *Stickles*—in a situation such as that in *Stickles* in which an adoptive parent steps into the shoes of the former legal parent the cut-off is mandatory as to those two parties unless rights are granted under other stat-

**(1)** Except as otherwise provided in this section, the effect of the order of adoption is to completely change the legal status of the adopted person from that of a child of the natural parents to that of a child of the adoptive parents; and to free the adopted person from all legal obligations to or on account of the natural parents, and vice versa.

**(2)** If the adopted person is not survived by a spouse or by issue or by an adoptive parent and there is no heir or next of kin of the adoptive parents, the property of the adopted person shall descend and be distributed as though there had been no adoption.

**(3)** If a parent of the person adopted is married to the adoptive parent the relation of the child to the natural parent is not altered by the adoption.

**(4)** The adopted person does not lose the right to inherit from his natural relatives.

**(5)** The adopted person shall inherit from his adoptive relatives in the same manner as from his natural relatives.

[9] *See Estate of Zastrow,* 42 Wis. 2d 390, 166 N.W.2d 251 (1969); *Estate of Topel,* 32 Wis. 2d 223, 145 N.W.2d 162 (1966); *Will of Adler,* 30 Wis. 2d 250, 140 N.W.2d 219 (1966); *Estate of Rhodes,* 271 Wis. 342, 73 N.W.2d 602 (1955); *Estate of Uihlein,* 269 Wis. 170, 68 N.W.2d 816 (1955); *Estate of Nelson,* 266 Wis. 617, 64 N.W.2d 406 (1954); *Estate of Ries,* 259 Wis. 453, 49 N.W.2d 483 (1951).

utes.[10] No one has brought to this court's attention any case interpreting sec. 48.92 that is inconsistent with the liberal construction that effectuates the best interests of the child in this case.

The approach taken in this dissent is consistent with that of the only two state supreme courts that have addressed the issue before us. Although the statutes interpreted in those cases are not identical to those of Wisconsin, they have congruent purposes and thus the interpretation by those courts is highly relevant. The Vermont Supreme Court concluded that the cut off provision[11] in the Vermont adoption statutes could not be interpreted to apply to a natural mother who intended to raise her child together with her partner. *Adoptions of B.L.V.B and E.L.V.B.,* 628 A.2d 1271, 1272 (Vt. 1993). The court reasoned that the state's

[10] A situation in which rights were granted by another statute was addressed by this court in *In the Matter of the Grandparental Visitation of C.G.F,* 168 Wis. 2d 62, 69–71, 483 N.W.2d 803, *cert. denied, T.F. v. H.F.,* — U.S. —, 113 S. Ct. 408 (1992). This court held that sec. 48.92(1) and (2) did not preclude grandparents from seeking visitation of the child of their deceased son, who was subsequently adopted by his stepfather, because sec. 880.155 allowed grandparents to petition a court for visitation privileges with respect to a grandchild if one or both parents were deceased.

[11] The cut off provision, 15 Vt. St. Ann. § 448 (1989), provides in relevant part:

> The natural parents of a minor shall be deprived, by the adoption, of all legal right to control of such minor, and such minor shall be freed from all obligations of obedience and maintenance to them. ... Notwithstanding the foregoing provisions of this section, when the adoption is made by a spouse of a natural parent, obligations of obedience to, and rights of inheritance by and through the natural parent who has intermarried with the adopting parent shall not be affected.

primary concern in the context of adoption is the welfare of children and a narrow interpretation of the adoption statute would not promote that concern. *Id.* at 1273. The purpose of the cut off provision was to protect the legal rights of the adopted person, not to proscribe adoptions by certain individuals. *Id.* at 1274. The Massachusetts Supreme Court also focused on the best interests of the child in upholding a joint adoption petition filed by the child's natural mother and her partner. *Adoption of Tammy,* 619 N.E.2d 315 (Mass. 1993). The court stated that the advancement of the child's best interests is the primary purpose of the Massachusetts adoption statutes and judicial construction should enhance, rather than defeat, that purpose. *Id.* at 318. The legislature did not mandate liberal construction in either Vermont or Massachusetts, but the respective courts determined such construction was necessary to further the best interests of the child. This court need not make a determination that liberal construction is necessary to further the best interests of the child—the Wisconsin legislature has already reached that conclusion.

The majority construes the adoption statutes strictly, ignoring the legislatively-mandated canon of liberal construction and applying canons of its own choosing without providing any reasons for doing so. The majority sets forth hypothetical adoption facts that are not before this court and analyzes the statutes in light of these hypotheticals even while acknowledging that other sections of the adoption statutes may prohibit the hypothesized adoptions. The majority also ignores the legislature's clear statement that the best interests of the child are paramount. Although strict construction of a statute is often seen as an exercise of

judicial restraint, in the present case such construction is precisely the opposite and flouts the legislative will.

When interpreting sec. 48.81, governing who may be adopted, the majority employs the canon that a statute is not to be construed so as to work absurd or unreasonable results. Applying this canon, the majority concludes that if sec. 48.81 is interpreted to mean that a minor is eligible for adoption after the parental rights of only one parent have been terminated, then a child could be adopted by a second person even against the wishes of the child's present legal parent. The majority then concludes that a minor is not eligible for adoption unless the rights of both parents have been terminated.

The majority's concern about the hypothetical adoption is misplaced, particularly given its acknowledgement that other sections of the adoption statutes may prohibit the adoption. It seems highly unlikely that a court would find such an adoption to be in the best interests of the child. Moreover, such an adoption would undoubtedly be prohibited as a violation of the constitutionally protected liberty interest of the legal parent to control the upbringing of that parent's child.[12]

---

[12] In *Meyer v. Nebraska,* 262 U.S. 390, 399 (1923), the United States Supreme Court concluded that the liberty interest protected by the Due Process Clause encompasses an individual's right "to marry, establish a home and bring up children." The Court relied on this liberty interest again in *Pierce v. Society of Sisters,* 268 U.S. 510 (1925). The Supreme Court has continued to affirm the validity of *Meyer* and *Pierce* and stress the primacy of parental authority. In a series of decisions during the 1960s and 1970s, the Supreme Court classified parental rights regarding child rearing as fundamental rights included within the constitutional right to privacy. *See,*

Next the majority discusses sec. 48.92(2), which, as previously discussed, provides that after an adoption "all the rights, duties and other legal consequences of the relationship [between the previous legal parents and the adopted child] shall cease to exist." Again the majority employs canons other than liberal construction, stating that "shall" is presumed mandatory in a statute and that the petitioners do not rebut this presumption. The majority also applies a second canon, that enumeration of certain exceptions, here the exception for stepparents, indicates that the legislature meant to exclude other exceptions. When the legislature has indicated which canon this court is to employ, I believe the court is constrained to do so.

In interpreting sec. 48.92(2), the majority sets forth the hypothetical that if "shall" is directory then a court may grant adoption to two people without severing ties between the previous legal parent, leaving the minor with three parents. Again, the hypothetical posited by the majority would likely be precluded by the best interests standard. This hypothetical is also precluded under the liberal construction of sec. 48.92(2) set forth above—the cut off is directory only to the remaining legal parent who continues to be in a

---

*e.g., Zablocki v. Redhail,* 434 U.S. 374, 384–85 (1978) (setting forth those personal decisions protected by the constitutional right of privacy). More recently the Court has resumed discussing these rights as liberty interests protected by the Fourteenth Amendment. *See Planned Parenthood of Southeastern Pennsylvania v. Casey,* — U.S. —, 112 S. Ct. 2791, 2807 (1992) (plurality opinion of O'Connor, Kennedy, and Souter, JJ.) (stating that matters of marriage, procreation, contraception, family relationships, child rearing and education "are central to the liberty protected by the Fourteenth Amendment").

nuclear family arrangement with the adoptive parent and the child.[13]

The concurring opinion asks the legislature to act to protect the best interests of Wisconsin children. The concurrence rests on the faulty premise that the legislature has not spoken. As I have discussed at length, the legislature has provided guidance—each statutory provision is to be liberally construed to further the best interests of the child. The concurring opinion provides no explanation for the majority's decision to ignore the legislature's expressed direction in respect to construction of the adoption statutes.

As indicated in a law review article cited by the majority, "a major consideration in any legal decision concerning the placement of a child is whether that placement safeguards the child's need for continuity of

---

[13] The majority's interpretation of the adoption statutes may demand further constitutional explication. The parties did not brief a constitutional issue that appears potentially troubling—whether refusing to allow this adoption violates Angel's right to equal protection under the Fourteenth Amendment because she is being treated differently from other children on the basis of her parentage. Without deciding, I note that foreclosing the child of a lesbian woman from enjoying the legal, practical and emotional benefits of growing up in a home with two legal parents could be analogous to unconstitutional discrimination against nonmarital children. *See Clark v. Jeter,* 486 U.S. 456 (1988); *New Jersey Child Welfare Rights Org. v. Cahill,* 411 U.S. 619 (1973) (per curiam); *Weber v. Aetna Casualty and Surety Co.,* 406 U.S. 164 (1972). *Cf. State v. Yoder,* 49 Wis. 2d 430, 448, 182 N.W.2d 539 (1971), *aff'd* 406 U.S. 205 (1972) (Heffernan, J., dissenting) (stating that the rights of children as well as parents must be considered).

relationships."[14] The majority disregards Angel's interests. Annette and Angel have a functional parent-child relationship but the majority's conclusion that the relationship cannot be accorded legal protection leaves Angel in a vulnerable position. Annette, who is already Angel's *de facto* parent, will not have the right nor the obligation to maintain their relationship were Georgina to die or become incompetent or were Annette and Georgina to separate. This court has already closed three avenues that Angel and Annette could have used to obtain legal rights to a continued relationship in the event Annette and Georgina were to separate—the right to seek custody is closed, the right to seek visitation is closed and the option of protecting the relationship through contract is closed. *See In re the Interest of Z.J.H.,* 162 Wis. 2d 1002, 471 N.W.2d 202 (1991). In the best interests of a young girl named Angel, this court should not close the door on her adoption.

I am authorized to state that Justice SHIRLEY S. ABRAHAMSON and Justice WILLIAM A. BABLITCH join this dissenting opinion.

JUSTICE WM. A. BABLITCH *(dissenting).* I join the dissenting opinion filed by Chief Justice Heffernan. Respectfully, I write only to address the concurring opinion which strongly urges the legislature to address this issue. My experience as a former member of the legislature tells me this: that will not happen.

In some legislation the legislature, recognizing that the future will bring issues to the fore that it

---

[14] Emily C. Patt, *Second Parent Adoption: When Crossing the Marital Barrier is in a Child's Best Interests,* 3 Berkeley Women's L.J. 96, 102 (1987–88) (citation omitted).

cannot anticipate at the time of passage of the bill, meets its obligation to the future by placing the burden on the courts to deal with those issues consistent with its expressed intent. This is just such an issue. That is why the dissent by the Chief Justice is so very correct.

The Legislative Council highlighted the adoption statutes as just such legislation. The Council, in its notes to the bill, took great care to point out to the legislature that the proposed adoption legislation effected a major change in the area of future interpretation: that not only would the principle of best interest of the child remain but also that the principle of strict construction of the adoption statutes would be rejected in favor of liberal construction. The importance of that change cannot be overemphasized. The legislature was told that the committee of its peers, the Legislative Council, was recommending that courts be instructed not only to interpret this statute and the situations that arise under them in light of the best interest standard but also to do so liberally. This was the "red flag" that told the legislature that if it adopted this legislation, future interpretation of even the thorniest of issues would be left to the courts, with the only canon being liberal construction in the best interests of the child.

Thus, the legislature knew precisely what it was doing when it inserted into the adoption statutes the somewhat amorphous and vague directives to the courts that in interpreting these statutes, they "shall be liberally construed to effect the objectives contained in this section," sec. 48.01(2), Stats., and that "(t)he best interests of the child shall always be of paramount consideration . . .." Section 48.01(2). The legislature knew it could not anticipate all the situations that might arise in the future. It certainly knew, if by

instinct only, that some of those issues would be very thorny indeed. And it most certainly knew, from experience alone, that future legislatures would be most reluctant to address the thorniest of them.

The legislature at times, as here, deliberately paints with a very broad and ambiguous brush. By design, it left the details to us, even the most controversial ones. We abdicate our responsibility by passing this back to the legislature, particularly when we know the likelihood of the legislature ever acting is minimal at best.

The legislature, by being deliberately ambiguous, is telling the courts, "We will not because we cannot spell out in detail every conceivable situation that might arise in the future, particularly the very sensitive ones. Look to the best interests of the child when these situations arise." As the dissent eloquently points out, everybody agrees what the best interests are here.